**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANET GODINEZ, on behalf of herself and as administrator to the estate of her brother, HERIBERTO GODINEZ, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) | No.   16 C 7344 |
| v. | ) ) | Judge Pallmeyer |
| The CITY OF CHICAGO, et al., | ) ) | Magistrate Judge Mason |
| Defendants. | ) | |

**<u>DEFENDANT CITY OF CHICAGO'S RESPONSE TO MOTION TO DISQUALIFY</u>**

Defendant City of Chicago ("City"), by its undersigned attorneys, for its response to Plaintiff's motion to disqualify, hereby states as follows:

**Summary of Argument**

Disqualification of an attorney is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir. 1993) (internal quotation omitted). Plaintiff's motion for disqualification, which is grounded in the lawyer witness rule codified in ABA Model Rule 3.7, baselessly makes personal attacks upon counsel and seeks the extraordinary remedy of disqualification rooted in nothing more than an allegedly anonymous phone call that provided no factual information. This motion should be denied for several reasons. First, the entire premise of the motion rests on the factually incorrect assumption that Godinez's neck was broken even though the X-rays scientifically prove that it was not. Second, the counsel at issue are not "necessary witnesses" because any information that they even

1

potentially possess is available from other sources. Third, Rule 3.7(a) is not a basis to disqualify counsel from participation in pre-trial proceedings. Finally, the request to disqualify Nathan & Kamionski LLP is baseless and would cause substantial hardship to Defendant City.

**Factual Background**

Decedent Heriberto Godinez ("Godinez") died on July 20, 2015, while he was in police custody. (Pl.'s First Amended Complaint ("FAC") at ¶ 8). Video footage of police interactions depicts Godinez resisting arrest and one or more police officers using their feet to restrain Godinez. (CBS News "Video of man who died in Chicago police custody released" http://www.cbsnews.com/news/video-of-man-who-died-in-chicago-police-custody-released/). After Godinez was restrained with flex cuffs, he can be seen on the video moving himself under a police car and then being taken outside the view of the camera by several police officers. (*Id.*)

The autopsy of Godinez occurred on July 21, 2015, and was conducted by Assistant Medical Examiner Latanja Watkins. (Pl.'s Motion at pp. 2-3). Plaintiff's motion implies that Dr. Watkins stated at Godinez's autopsy that the "head was hypermobile and…that the neck had been broken at midpoint." (Pl.'s Motion at p. 3). That quotation referenced in Plaintiff's motion is hearsay and, in any event, is not even supported by a citation. Moreover, according to Dr. Watkins, "At no point in time did [she] tell anyone definitively that Mr. Godinez suffered fractures or subluxations of the cervical spine, commonly referred to as 'broken neck.'" (Affidavit of Dr. Latanja Watkins, attached hereto as Exhibit 1 ¶11).

2

After the autopsy, the Cook County Medical Examiner's Office ("CCME") submitted X-rays of Godinez's neck to a radiologist for interpretation. On July 31, 2015, the X-rays showed, "No convincing evidence of atlantoociptal disassociation." (Report of Postmortem Radiographs, attached hereto as Exhibit 2). In other words, the X-rays showed that Godinez's neck was not broken. (Ex. 1 ¶¶7-8).

The CCME issued its official Report of Postmortem Examination ("Autopsy Report") regarding Godinez, which was respectively signed by Doctors Cina and Watkins on September 10 and 11, 2015. (Autopsy Report, attached hereto as Exhibit 3). With respect to the neck, the Autopsy Report referenced the findings from the X-rays and found "a posterior neck dissection was unremarkable" (*Id.* at pp. 4-5), and concluded that the manner of Godinez's death was "undetermined." (Id. at 11). The report concluded:

> In summary, the substantial factor in this death was ethanol and cocaine toxicity. The use of these substances predisposed Mr. Godinez to a lethal dysrhythmia. There is also evidence that Mr. Godinez was intensely exerting himself while apprehended and this activity was most likely associated with elevated serum catecholamines. While the factors listed would support a manner of death finding as Accidental, the actions of the arresting officers prior to and following the available video footage may also have resulted in physical stress on the body, despite the fact that there were no lethal injuries or evidence of asphyxia. Many of the injuries noted would be compatible with those received while struggling on a paved surface. Lastly, it is unknown if Fahr's mineral vascularization or a "stroke" contributed to his death. For these reasons:
>
> MANNER OF DEATH: UNDETERMINED.

(*Id.*).

IPRA conducted an audiotaped interview of Dr. Watkins on November 30, 2016, where Dr. Watkins was represented by counsel. (Transcript of Dr. Watkins Interview,

3

attached hereto (under seal) as Exhibit 4; Motion at p. 4). Present for the interview were IPRA Investigators Dennis Prieto and Michael Goldston, as well as IPRA's then General Counsel, Helen O'Shaughnessy. (See Ex. 4). Dr. Watkins explained during this statement, "." (*Id.* at p. 13:11-13). She further explained, "." (*Id.* at p. 15:8-10). Dr. Watkins presently stands by her medical opinions as set forth in the autopsy report and maintains that her medical opinions never changed. (Ex. 1 ¶¶7-8, 12).

Ms. O'Shaughnessy served as IPRA's general counsel from April 27, 2016, until September 29, 2017, with her last day being September 22, 2017. (Affidavit of Helen O'Shaugnessy ¶¶1 & 4, attached hereto as Exhibit 5). Attorney O'Shaughnessy began working at Nathan & Kamionski LLP on October 1, 2017, and she filed her appearance in the Godinez case on behalf of the City on December 19, 2017. (Ex. 5 ¶5). O'Shaughnessy never acted as an investigator during IPRA or COPA's investigation into Mr. Godinez's death. (Ex. 5 ¶8, 12). While at IPRA/COPA, O'Shaughnessy was never assigned to work on the Godinez investigation and she appeared at the audiotaped statement of Dr. Watkins in order to cover for another attorney who had a scheduling conflict. (Ex. 5 ¶¶11-12). The audiotaped interview of Dr. Watkins was conducted by IPRA Investigator Dennis Prieto and O'Shaughnessy did not ask a single question. (See Ex. 4; Ex. 5 ¶15). At the conclusion of the interview, Prieto asked O'Shaughnessy if she had any questions and O'Shaughnessy can be heard asking

4

Prieto to "clarify" something that is inaudible. (Ex. 5 ¶16; see also Ex. 4). The very next question and answer in the interview of Dr. Watkins are as follows: "Q: Is it possible that the officer standing on Mr. Godinez, contributed to his death? A: That's possible." (Ex. 5 ¶16; see Ex. 4 at p. 19:1-3;).

IPRA issued its Summary Report, outlining its investigative findings on October 24, 2017. (Ex. 5 ¶6). This report was issued after O'Shaughnessy had already left COPA and she had no role in the conclusion of the investigation or the disciplinary recommendations made by COPA. (Ex. 5 ¶19). In this report, IPRA found, among other things, that Officers Johnson and Corona had used unauthorized force when they restrained Godinez with their feet.

The FAC does not allege that Godinez's neck was broken and Plaintiff has provided no information in discovery to suggest that any physical evidence would support such an allegation. (Pl.'s Resp. to Def. City's First Set of Interrogatories ¶¶ 11-12, attached hereto as Exhibit 6).

## ARGUMENT

**I. The Entire Premise Of Plaintiff's Motion—That The Medical Examiner Allegedly Changed Her Opinion—Is Inconsistent With The Scientific Facts And The Affidavit of Dr. Watkins.**

The premise of Plaintiff's entire motion is that O'Shaughnessy is allegedly a necessary witness to establish "the circumstances of Watkins's November 30, 2016 IPRA statement and what led to the change in her findings." (Motion at p. 6). As described in Section II(B), *infra*, Dr. Watkins is the best witness to answer this question and, thus, O'Shaughnessy is not a "necessary witness." However, the physical evidence, Dr. Watkins's recent affidavit, and the timing of the Autopsy Report

5

conclusively establishes that O'Shaughnessy had nothing to do with Dr. Watkins's opinion.

Dr. Watkins made a tentative and preliminary statement during the autopsy that took place on July 21, 2015. At this point, it is unclear what exactly Dr. Watkins actually said at the autopsy. Plaintiff claims that Dr. Watkins at one point believed the neck was broken and Watkins denies ever definitively saying that. (Ex. 1 ¶11). What is undisputed, however, is that any statement that may have been made at the autopsy would have been without the benefit of radiological findings. The radiology report, which was completed on July 31, 2015, just 11 days after Godinez's death, found "no convincing evidence of atlantoocciptal disassociation." (Ex. 2). The Autopsy Report was signed by Dr. Watkins on September 11, 2015, and Dr. Cina signed it on September 10, 2015. (Ex. 3). This was well over a year before Watkins's interview with IPRA. The Autopsy Report relied upon the radiology report and clearly found that "a posterior neck dissection was unremarkable," (Ex. 3 at pp. 4-5).

Dr. Watkins explained these findings in her audiotaped interview with IPRA as follows:



(Ex. 4 at p. 15:5-14).

6

Given the radiological findings that scientifically prove that Godinez did not sustain a broken neck, it is not surprising that Dr. Watkins's opinion in her official Autopsy Report and at her IPRA statement is consistent with the X-ray results. To the extent that Dr. Watkins ever changed her mind regarding Godinez's neck, the simple fact is that Watkins's medical opinion that Mr. Godinez did not sustain a broken neck is based upon the X-rays of the neck. (Ex. 1 ¶¶7-8). In light of this clear medical evidence and the anticipated deposition testimony by Dr. Watkins, there is no basis for Plaintiff to even take a deposition of defense counsel, much less seek their disqualification.

## II. The Record Is Devoid Of Any Basis To Disqualify Attorney O'Shaughnessy.

Courts recognize that "the ability to deny one's opponent the services of capable counsel[ ] is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen,* 849 F.2d 222, 224 (6th Cir.1988). Because they are potential "techniques of harassment," motions for disqualification are "viewed with extreme caution." *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir. 1982); *Mercury Vapor,* 545 F.Supp.2d at 787; *Bogosian,* 95 F.Supp.2d at 875. Here, there are no facts set forth in Plaintiff's motion that would support disqualification and, in any event, O'Shaughnessy is not a "necessary witness" under ABA Model Rule 3.7(a).

### A. The Reference To An Anonymous Phone Call That Provided No Specific Information Is Not A Proper Basis To Disqualify Counsel.

The facts are at odds with the speculative allegations contained within Plaintiff's motion that O'Shaughnessy allegedly attempted to influence the medical opinion of Dr. Watkins. Dr. Watkins signed off on her opinion that Mr. Godinez's neck was not broken

7

on September 11, 2015, more than six months before O'Shaugnessy even started working at IPRA in April of 2016. (Ex. 1 ¶9; Ex. 5 ¶1). O'Shaughnessy affirms that she "did not communicate with Dr. Watkins before her statement and [she] did not seek to influence her opinions in any way." (Ex. 5 ¶13). Similarly, Dr. Watkins affirms that "no individual has ever influenced my opinions in this matter," (Ex. 5 ¶14), and that she "never received 'prep' questions from anyone in this case." (Ex. 5 ¶15). In fact, Dr. Watkins does not even know who O'Shaughnessy is. (Ex. 1 ¶13). At bottom, Dr. Watkins's opinion that Mr. Godinez's neck was not broken is based on the X-Rays and her own medical opinion. (Ex.1 ¶¶7-8, 10; Ex. 4 at p. 15:5-14).

There are simply no facts in the record that would support the drastic remedy of disqualification being requested here. Plaintiff's motion offers nothing more than speculation that O'Shaughnessy, IPRA's general counsel at the time, allegedly sought to influence Dr. Watkins's statement. Plaintiff points to an anonymous phone call to their offices that allegedly claimed that O'Shaughnessy acted as an investigator and not an attorney for IPRA during that agency's investigation into Godinez's death. (Motion at p. 4). This is unreliable hearsay that, in any event, provides nothing more than editorial comment. O'Shaughnessy did not act to influence Dr. Watkins's opinion and Plaintiff points to no other facts that could even potentially trigger disqualification. Therefore, the extraordinary remedy of disqualification that Plaintiff requests should be denied.

### B. O'Shaughnessy Is Not A "Necessary Witness" Pursuant to ABA Model Rule 3.7(a).

ABA Model Rule 3.7(a) provides that: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless (1) the testimony

8

relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client. Given the potential for litigation abuse, the Seventh Circuit interprets the "necessary witness" provision of Rule 3.7(a) very narrowly and only permits disqualification where the same evidence cannot be obtained through alternate sources. *See United States v. Turner*, 651 F.3d 743, 750 (7th Cir. 2011); *Walton v. Diamond,* No. 12 C 4493, 2012 WL 6587723, at *2 (N.D. Ill. Dec. 14, 2012) ("A 'necessary' witness under Rule 3.7 is one whose testimony is unobtainable elsewhere...If the evidence that would be offered by having an opposing attorney testify can be elicited through other means, then the attorney is not a necessary witness.") (citation and quotation omitted).

     Here, the only basis Plaintiff identifies for the disqualification relief requested is the highly speculative allegation that O'Shaughnessy somehow manipulated Dr. Watkins to have her conclude that Godinez's neck was not broken. This allegation is specious, however, because Watkins's opinion that the neck was not broken is based on the X-ray and not the subject of legitimate dispute. (Ex. 1 ¶¶7-8; see Ex. 4 at p. 15:5-14). This scientific fact positively proves the complete lack of merit in Plaintiff's motion. Moreover, the Autopsy Report and radiology report of the CCME—which made the official finding that Godinez did not sustain a broken neck—were finalized more than 6 months before O'Shaughnessy even began working at IPRA on April 27, 2016. (Ex. 5). Finally, the affidavit of O'Shaughnessy clearly establishes that she was the general

9

counsel for IPRA/COPA and she never worked on the investigation of the Godinez matter as an investigator. (Ex. 5 ¶¶ 1, 8, 12).

To the extent that Plaintiff's motion is predicated on O'Shaughnessy's mere presence at the audiotaped interview of Dr. Watkins, this is evidence that could be admitted through testimony from any one of the four other individuals that were present for the interview, most notably, Dr. Watkins herself. As such, O'Shaughnessy is not a "necessary witness." Out of the thousands of pages of document production from IPRA/COPA that were produced in this case, Plaintiff points to a single handwritten note as alleged evidence of O'Shaughnessy's cross-over from attorney to investigator. But, as established in O'Shaughnessy's affidavit, these notes do not even belong to O'Shaughnessy. (Ex. 5 ¶18).

Plaintiff references a 10-second instance at the conclusion of the audiotaped interview of Dr. Watkins where the IPRA investigator asks O'Shaughnessy if she has any questions. O'Shaughnessy does not ask any questions at the statement of Dr. Watkins but can be heard whispering on the tape something to the effect of "Just clarify…(inaudible)." (See Ex. 5 ¶16). Immediately following this whisper, the following question and answer takes place:

> Q: Is it possible that the officer standing on Mr. Godinez contributed to his death?
>
> A: It's possible.

(Ex. 5 ¶16; See Audiotape of Watkins Interview at 26:00 minutes, available upon the Court's request at IPRA attachment 222). First, the fact that O'Shaughnessy does not ask any questions during the interview of Watkins is evidence that she was not acting

as an investigator. Second, advice that a matter should be clarified is the appropriate role of an attorney that is representing the interests of a municipal agency at a witness statement. And finally, this single question that followed O'Shaughnessy's suggested clarification was helpful to Plaintiff and does not indicate bias against Plaintiff as alleged in Plaintiff's motion. Because any information regarding Dr. Watkins's statement and her opinion could be obtained from a deposition of Dr. Watkins, O'Shaughnessy is not a "necessary witness" for purposes of ABA Rule 3.7(a). See *Turner*, 651 F.3d at 750.

### III. A Disqualification Motion Is Premature Because This Case Is Not Ready For Trial.

An independent reason to deny Plaintiff's motion is the fact that ABA Model Rule 3.7(a) does not provide a basis to disqualify counsel from pretrial proceedings. By the express terms of the rule it only provides a basis for disqualifying attorneys that are necessary witnesses "<u>at a trial</u>." Model Rule 3.7(a) ("A lawyer shall not act as advocate <u>at a trial</u> in which the lawyer is likely to be a necessary witness unless…"). This inherent limitation of Model Rule 3.7(a) has repeatedly been recognized by courts in this judicial district. *See Dawaji v. Kohlhoss*, No. 13 CV 6404, 2013 WL 6197161, at *3 (N.D. Ill. Nov. 27, 2013) ("At this point in the litigation, this court finds that it is too early to anticipate the testimony or proof likely to be offered by any of the parties. Even if [the attorney's] testimony can be deemed to be necessary at trial, ABA Model Rule 3.7 does not empower this court to disqualify him at this time"); *Alfa CTP Sys., Inc. v. Nierman*, No. 15-CV-9338, 2016 WL 687281, at *6 (N.D. Ill. Feb. 19, 2016) (St. Eve, J.)(Model Rule 3.7(a) concerns "do not come into play unless and until the attorney-witness is also trial counsel."). Therefore, Plaintiff's motion to disqualify should be denied as premature.

11

**IV.     To The Extent Attorney O'Shaughnessy Is A "Necessary Witness," So Are Counsel For Plaintiff.**

People in glass houses should not throw stones and the baseless accusations Plaintiff casts against defense counsel are little more than a cynical attempt to divert attention from themselves. According to Dr. Watkins, Plaintiff's counsel, Attorney Jeffery Granich, had at least two conversations with Dr. Watkins and at least one of these conversations was <u>before</u> the Autopsy Report was completed. For example, Dr. Watkins spoke with Attorney Granich on the phone once prior to the completion of the autopsy report where she was left with the mistaken impression that Mr. Granich was a prosecutor and not the attorney for Plaintiff. (Ex. 1 ¶¶ 16-17). Dr. Watkins also recalls having a meeting with Attorney Granich in 2016 where she "answered questions about the autopsy findings and provided opinions consistent with [her] report." (Ex. 1 ¶ 17).

In addition, plaintiff Janet Godinez testified at her deposition as follows:

> Q: Did you go meet with the medical examiner at some point?
>
> A: Yes.
>
> Q: When did you do that?
>
> A: After his death, I went with my attorney and, my sister and my cousin.
>
> Q: What did you guys talk about there?
>
> A: Why -- why they thought that -- what their opinion was on my brother's death, what contributed to his death.
>
> ***
>
> Q: Do you remember anything else that came up at the meeting?
>
> A: No. He asked one of the medical examiners, I forgot her name, because she had mentioned that she had seen the video way before

12

>we even knew a video existed. But then she changed her story in the meeting and said that she never said anything, but that's how we found out about the video.

(Deposition of Janet Godinez at pp. 226-268, attached hereto as Exhibit 7). It turns out that Plaintiff's counsel appears to have had at least one conversation with Dr. Watkins about the cause of Godinez's death well before the Autopsy Report was signed in early September of 2015.

To the extent that the Court entertains the notion that the mere desire of one party to ask questions of the other side's counsel is a basis for disqualification, such a standard would apply equally to Plaintiff's counsel. Defense counsel would seek to take depositions of Plaintiff's attorneys about communications they had with the medical examiner's office and any efforts they made to influence any verbiage within the Autopsy Report.

**V.     The Request To Disqualify Attorneys Nathan And Kamionski Lacks Any Basis And Should Similarly Be Denied.**

The City intends to voluntarily have Ms. O'Shaughnessy withdraw her appearance in the Godinez case out of the abundance of caution. However, there is no basis to deprive the City of its choice of counsel with respect to Attorneys Nathan and Kamionski. As demonstrated above, even O'Shaughnessy is not a "necessary witness" and the allegations within Plaintiff's motion are spurious. The notion that O'Shaughnessy "manufactured evidence" during the IPRA investigation is at odds with the scientific evidence and not even possible based on the timeline. Therefore, the next leap of baseless speculation that Attorneys Nathan and/or Kamionski somehow colluded with O'Shaughnessy in an effort to manipulate Dr. Watkins or the IPRA/COPA

13

investigation has no basis in fact. Attorneys Nathan and Kamionski unequivocally state, as officers of the court, that they did not attempt to manipulate or otherwise influence the opinions of Dr. Watkins or the outcome of the IPRA/COPA investigation into the Godinez case.

An unsupported assertion that "it may become necessary to take Nathan and/or Kamionski's depositions" does not distinguish this case from any other and provides no grounds to disqualify counsel. ABA Model Rule 3.7 (b) specifically provides that "A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely[1] to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Finally, even if Attorneys Nathan and Kamionski one day became witnesses for some unforeseen reason, a scenario that is no more likely here than in any other case, ABA Model Rule 3.7(a) would still not require disqualification because it would operate as a "substantial hardship on the client" given that Attorneys Nathan and Kamionski have been responsible for the lion's share of the very substantial document production that has been made in this case. See ABA Rule 3.7(a)(setting forth a substantial hardship exception to the "necessary witness" rule). Therefore, there is no basis to disqualify Attorneys Nathan and Kaminoski or the law firm of Nathan & Kamionski LLP.

VI.   **Plaintiff Should Not Be Permitted A De Facto Disqualification.**

One of the aspects of Plaintiff's motion is a request to "stay substantive discovery until the disqualification issue can be resolved." (Motion at p. 8). To the extent that this

---

[1] The defendants do not concede that it is likely that Helen O'Shaughnessy will be called as a witness. Supra at pp. 8-11.

Court does not fully resolve the motion to disqualify at the hearing scheduled for March 6, 2018, the case should not be stayed pending the resolution of this issue. Were the case to be stayed or were Attorneys Nathan and Kamionski to be otherwise temporarily excluded, this would amount to a *de facto* granting of Plaintiff's motion and would prejudice the City. As demonstrated above, even in the highly unlikely event that Plaintiff ever sets forth a genuine basis for ABA Model Rule 3.7(a) disqualification, this would not be a proper basis to disqualify Attorneys Nathan and Kamionski from the pretrial proceedings that are presently being conducted.

WHEREFORE, Defendant City requests that this Court deny Plaintiff's motion to disqualify and grant it whatever other relief this Court deems necessary and proper.

Respectfully submitted,

/s/ Shneur Nathan (Att. # 6294495)
Shneur Nathan

Avi T. Kamionski
Shneur Z. Nathan           s/ Avi Kamionski (Att. #6283191)
Nathan & Kamionski LLP     Avi Kamionski
140 S. Dearborn, Suite 1510
Chicago, IL 60603
312-612-1955 (P)

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of the filing on the same day to all counsel of record.

/s/ Shneur Nathan
Shneur Nathan