IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JANET GODINEZ, on behalf of herself and as administrator of the estate of her brother, HERIBERTO GODINEZ, Deceased, <br><br> Plaintiff, <br><br> vs. <br><br> The CITY OF CHICAGO, et al., <br><br> Defendants. | 16 CV 7344 <br><br> Judge PALLMEYER |

## PLAINTIFF'S LOCAL RULE 56.1(a)(3) STATEMENT OF UNCONTESTED FACTS

Plaintiff Janet Godinez respectfully submits this Local Rule 56.1(a)(3) Statement of Uncontested Facts:

### JURISDICTION

1. Jurisdiction and venue are proper in this Court because Plaintiff brings claims pursuant to 42 U.S.C. §1983 as well as 28 U.S.C. §1367, and the events giving rise to this lawsuit took place in this District. *Defendants' Answers to Plaintiff's Second Amended Complaint*, attached as **Exhibit A,** at ¶¶1-3.

2. At the time of his death, decedent Heriberto Godinez was a 26-year-old male and a resident of the City of Chicago, Illinois. *Plaintiff's Second Amended Complaint*, attached as **Exhibit B,** at 4.

3. At all relevant times, Defendant Officers were Chicago Police Officers, on duty and acting within the scope of their employment. *Defendants' Answers*, Ex. A, at ¶6.

4. Defendant City is a municipal corporation, duly incorporated under the laws of the State of Illinois. *Defendants' Answers*, Ex. A, at ¶7.

### FACTS

**Lindskog and McAndrew encounter Godinez.**

5. At 12:57:13 a.m. on July 20, 2015, the Office of Emergency Management and Communications ("OEMC") received a 911 call about Godinez from a man named Julio Garcia, who lived on the same block as Heriberto Godinez on 39th Place on the southwest side of Chicago. *OEMC Event Query No. 1520100718*, attached as **Exhibit C,** at 1; *911 Call Audio Recording*, attached as **Exhibit D.**

6. Garcia reported that Godinez was acting strangely, had been pounding on his door, had sworn at Garcia and then ran away. *911 Call Audio Recording*, Ex. D.

7. Defendants Lindskog and McAndrew responded to the 911 call and spoke to Garcia briefly. *Lindskog IPRA Statement*, attached as **Exhibit E,** at 5:13-6:11; *McAndrew 9/1/15 IPRA Statement*, attached as **Exhibit F,** at 6:21-7:16.

8. Lindskog and McAndrew then found Godinez approximately ten minutes later in an alley a few blocks away, near the intersection of Pershing Road and Albany Avenue. *OEMC Event Query No. 1520100718*, Ex. C, at 1; *Lindskog IPRA Statement*, Ex. E, at 6:12-21, 14:10-19; *McAndrew 9/1/15 IPRA Statement*, Ex. F, at 8:3-9:11.

9. Lindskog and McAndrew claim that Godinez was inside a garage when they found him and that he came running out into the alley with his hands up. *Lindskog IPRA Statement*, Ex. E, at 6:20-7:5; *McAndrew 9/1/15 IPRA Statement*, Ex. F, at 9:9-27.

10. According to McAndrew, Godinez was acting erratically. *McAndrew 9/1/15 IPRA Statement*, Ex. F, at 11:2-4.

11. McAndrew testified that Godinez said he was in the garage hiding from gangbangers. *McAndrew Deposition Transcript Excerpts ("McAndrew Dep. Tr.")*, attached as **Exhibit G,** at 187:2-9.

12. Corona testified that the police interaction with Godinez was part of a "burglary investigation." *Corona Deposition Transcript Excerpts*, attached as **Exhibit H**, at 200:19-201:14.

13. Lindskog ordered Godinez to the ground and Godinez complied, lying on his stomach in the alley. *Lindskog IPRA Statement*, Ex. E, at 14:18-24; *McAndrew 9/1/15 IPRA Statement*, Ex. F, at 9:30-10:3.

14. Lindskog and McAndrew handcuffed Godinez behind his back. *Lindskog IPRA Statement*, Ex. E, at 15:4-11; *McAndrew 9/1/15 IPRA Statement*, Ex. F, at 9:30-10:3.

15. Arroyo and Corona arrived on scene and parked in the mouth of the alley, facing north towards the rear of Lindskog and McAndrew's police vehicle. *In-Car Camera ("ICC") Video Recording*, attached as **Exhibit I,** at 12:06:29 a.m.

16. As Arroyo and Corona arrived, Godinez was lying face down with his hands cuffed behind his back. *ICC Video Recording, Ex. I*, at 12:06:29 a.m.

17. Arroyo and Corona's police vehicle was equipped with a forward-facing in-car camera system, which produced a video recording of the events in the alley that night. *ICC Video Recording*, Ex. I.

**McAndrew's involvement.**

18. McAndrew was standing next to Godinez with his left foot on Godinez's back, but removed his foot approximately seven to ten seconds later. *ICC Video Recording*, Ex. I, at 12:06:29-12:06:37; *McAndrew Dep. Tr.*, Ex. G, at 250:5-23.

19. Godinez was not thrashing, kicking, or resisting Defendant Officers at this time. *ICC Video Recording*, Ex. I, at 12:06:29 a.m.-12:06:37 a.m.

20. Defendant Officers let Godinez lie on the concrete prone and handcuffed behind his back. *ICC Video Recording,* Ex. I, at 12:06:45 a.m.-12:07:43 a.m.

21. Godinez then maneuvered himself into a seated position, leaning against Lindskog and McAndrew's police SUV. *ICC Video Recording,* Ex. I, at 12:07:43 a.m.

22. McAndrew believed that Godinez was suffering from mental health issues. *McAndrew Dep. Tr.*, Ex. G, at 100:19-101:4.

23. Godinez began moving towards the rear of the police SUV. *ICC Video Recording*, Ex. I, at 12:10:10 a.m.

24. McAndrew put his hands on Godinez's shoulders and pushed him to the ground, and at that time, Godinez began moving and squirming. *ICC Video Recording,* Ex. I, at 12:10:00 a.m.

25. McAndrew placed his knee into Godinez's stomach. *ICC Video Recording*, Ex. I, at 12:10:11 a.m.

26. McAndrew later saw Johnson place his foot on Godinez's head and did nothing about it. *McAndrew 6/2/16 IPRA Statement*, attached as **Exhibit J,** at 11:17-22.

27. The ICC video shows that McAndrew was bending over or kneeling at the side of Godinez's body, holding down Godinez's left shoulder, during the entire time Johnson used his foot to stand on Godinez. *ICC Video Recording,* Ex. I, at 12:11:09 a.m.-12:14:16 a.m.; *McAndrew Dep. Tr.*, Ex. G, at 131:10-24; 254:17-24.

**Corona's involvement.**

28. Corona testified that Godinez was agitated, sweating profusely, and that his breathing was labored. *Corona 9/4/15 IPRA Statement*, attached as **Exhibit K**, at 8:1-11.

29. Corona walked up to Godinez and placed his foot on Godinez's stomach. *ICC Video Recording,* Ex. I, at 12:10:16 a.m.

30. Corona placed his right foot on the side of Godinez's head and pushed his head onto the concrete under the police SUV. *ICC Video Recording,* Ex. I, at 12:10:19 a.m.; *Corona 9/4/15 IPRA Statement*, Ex. K, at 15:1-23; *McAndrew Dep. Tr.*, Ex. G, at 254:6-12.

31. Godinez moved his legs and tried to move his head out from underneath Corona's foot. *ICC Video Recording,* Ex. I, at 12:10:21 a.m.

32. Corona later drafted a Tactical Response Report ("TRR") documenting his use of force on Godinez. *Corona TRR*, attached as **Exhibit L**.

33. Corona's TRR lists Corona's weight as 155 pounds. *Corona TRR*, Ex. L.

34. Corona's TRR admits that Godinez was unarmed and injured. *Corona TRR*, Ex. L.

35. Corona's TRR classifies Godinez as a "passive resister" and an "active resister," but not an "assailant" of any kind. *Corona TRR*, Ex. L.

36. Corona's TRR admits that Corona held Godinez's head down, although it does not include the fact that Corona used his foot to do so. *Corona TRR*, Ex. L.

**Johnson's involvement.**

37. Johnson, Madsen, and Nowakowski arrived and walked into the alley. *ICC Video Recording,* Ex. I, at 12:11:06 a.m.

38. When they arrived, Godinez was lying on his stomach in the alley with his hands cuffed behind his back. *ICC Video Recording,* Ex. I, at 12:11:06 a.m.

39. McAndrew was holding Godinez's upper body down with his hands while Corona was holding Godinez's legs down with his foot or feet. *ICC Video Recording,* Ex. I, at 12:11:06 a.m.

40. Johnson immediately placed his foot on Godinez's head, neck, or shoulder. *ICC Video Recording*, Ex. I, at 12:11:09 a.m.; *Johnson Deposition Transcript Excerpts ("Johnson Dep. Tr.")*, attached as **Exhibit M,** at 47:12-48:18, 232:3-20, 234:3-14; *McAndrew Dep. Tr.*, at 73:9-23, 132:11-16; *Madsen Deposition Transcript Excerpts ("Madsen Dep. Tr.")*, attached as **Exhibit N,** at 104:24-105:11, 119:7-13, 126:20-24.

41. At one point, Johnson balanced on one foot and focused all his weight in one place on Godinez's neck for more than a minute. *ICC Video Recording, Ex. I*, at 12:12:36 a.m-12:14:16 a.m.

42. Johnson claims that his foot was on Godinez's left shoulder blade. *Johnson Dep. Tr.*, Ex. M, at 47:12-48:18, 232:3-20.

43. Madsen also claims that Johnson's foot was on Godinez's shoulder. *Madsen Dep. Tr.*, Ex. N, at 104:24-105:11, 119:7-13, 126:20-24.

44. McAndrew testified that Johnson's foot was on Godinez's shoulder and head. *McAndrew Dep. Tr.*, Ex. G, at 73:9-23.

45. Johnson had his foot in the center of Godinez's body, and Godinez's right shoulder can be seen moving up and down. *ICC Video Recording,* Ex. I, at 12:12:12 a.m.-12:13:15 a.m.; *ICC Video Screenshot*, attached as **Exhibit O.**

46. Johnson had his foot on Godinez's neck and back for more than two minutes in total. *ICC Video Recording,* Ex. I, at 12:11-09 a.m.-12:14:16 a.m.

47. A civilian walked into the view of the camera and stood in the alley near Godinez. *ICC Video Recording,* Ex. I, at 12:11:27 a.m.

48. Johnson did not complete a TRR. Rather, Johnson left the scene and could not be reached on his cell phone by Chicago Police Detectives who were trying to contact him. *Case Supplementary Report*, attached as **Exhibit P**, at 11.

**Arroyo's involvement.**

49. Arroyo walked up to Johnson while Johnson was standing on Godinez and shined his flashlight on Godinez's face. *ICC Video Recording,* Ex. I, at 12:11:22 a.m.-12:11:43 a.m.; *Arroyo Deposition Transcript Excerpts ("Arroyo Dep. Tr.")*, attached as **Exhibit Q**, at 229:21-24; *McAndrew Dep. Tr.*, Ex. G, at 255:17-21.

**Madsen's involvement.**

50. Madsen knelt down by Godinez's right shoulder as Johnson was standing on Godinez. *ICC Video Recording, Ex. I*, at 12:11-09 a.m.-12:14:16 a.m.; *Madsen Dep. Tr.*, Ex. N, at 258:8-14; *McAndrew Dep. Tr.*, Ex. G, at 256:7-19.

51. Madsen knelt at Godinez's feet and helped apply the flex cuffs as Johnson put his full weight on Godinez. *ICC Video Recording,* Ex. I, at 12:13:13 a.m.-12:14:16 a.m.

**Nowakowski's involvement.**

52. Nowakowski was just feet away from Johnson while Johnson was standing on Godinez and was looking at Godinez. *ICC Video Recording,* Ex. I, at 12:11:09 a.m.-12:14:16 a.m; *Nowakowski Deposition Transcript Excerpts*, attached as **Exhibit R**, at 285:10-286:20.

**Jerome's involvement.**

53. Jerome admitted that he saw Johnson with his foot "near" Godinez's shoulder area. *Jerome Deposition Transcript Excerpts ("Jerome Dep. Tr.")*, attached as **Exhibit S,** at 120:19-23.

54. Jerome was present when Johnson was standing on Godinez, just before Godinez became still for approximately four minutes. *ICC Video Recordings*, Ex. I, at 12:13:42 a.m.-12:14:16 a.m.; *Jerome Dep. Tr.*, Ex. S, at 218:23-219:4.

55. It appeared to Jerome that Godinez might have been "sleeping." *Jerome Dep. Tr.*, Ex. S, at 175:2-5.

56. At 1:18:20 a.m., Jerome communicated to the dispatcher via his radio that everything was OK and that the police no longer needed shackles for Godinez. *OEMC Event Query No. 1520100178*, Ex. C, at 2.

57. Jerome believed that Godinez needed a mental health evaluation. *Jerome 8/11/15 IPRA Statement*, attached as **Exhibit T,** at 11:12-19.

**Godinez is taken to the squadrol and dies.**

58. According to Defendant Officers, Godinez was a "passive resistor" or an "active resistor," but not an assailant of any kind. *Johnson Dep. Tr.*, Ex. M, at 99:16-20; *Corona Dep Tr.*, Ex. H, at 35:8-13; *Corona TRR*, Ex. L.

59. Defendant Officers placed flex cuffs on Godinez's legs. *ICC Video Recording*, Ex. I, at 12:13:13 a.m.

60. Johnson took his foot off Godinez and backed away and the other Officers kneeling around Godinez all stood up and moved away from Godinez as well. *ICC Video Recording*, Ex. I, at 12:14:16 a.m.

61. Godinez was no longer moving and the Officers began backing away from him. *ICC Video Recording*, Ex. I, at 12:14:16 a.m.

62. Officers milled around in the alley, occasionally looking down at Godinez or shining their flashlights on him. *ICC Video Recording*, Ex. I, at 12:14:16 a.m.-12:18:24 a.m.

63. For approximately four minutes, Godinez appeared to be still. *ICC Video Recording*, Ex. I, at 12:14:16 a.m.-12:18:24 a.m.

64. Godinez then suddenly became frantic, flopping around on the ground and trying to scoot his body away from the officers and under a running police car. *ICC Video Recording*, Ex. I, at 12:18:24 a.m.

65. Officers pulled Godinez out from under the SUV and then carried him past the ICC camera and out of the view of Arroyo and Corona's ICC. *ICC Video Recording*, Ex. I, at 12:18:47 a.m.-12:19:27 a.m.

66. When the Defendants carried Godinez off camera, his head and neck were unsecured and his head whipped forward and back. *ICC Video Recording*, Ex. I, at 12:19:24 a.m.

67. According to Defendants, they carried Godinez to a squadrol parked on Pershing near the mouth of the alley and placed him inside. *Lindskog IPRA Statement*, Ex. E, at 8:4-17; *Corona IPRA Statement*, Ex. K, at 17:18-18:26.

68. Eyewitness Mayela Ramirez testified that she heard Godinez shout, "I can't breathe!" as he was being carried to the squadrol. *Ramirez IPRA Statement Summary*, attached as **Exhibit U.**

69. Jerome testified that Godinez's breathing was labored when he was in the squadrol. *Jerome 8/11/15 IPRA Statement*, Ex. T, at 12:30-13:5.

70. At 1:27:01 a.m., Corona requested an ambulance over his radio. *OEMC Event Query No. 1520100718*, Ex. C, at 2.

71. This was the first time any officer summoned medical treatment for Godinez. *OEMC Event Query No. 1520100718*, Ex. C.

72. Chicago Fire Department paramedics reported that they were "at patient" at 1:34:00 a.m. *Chicago Fire Department Run Report*, attached as **Exhibit V.**

73. A minute later, they reported that Godinez had no pulse and no blood pressure and was not breathing. *CFD Run Report*, Ex. V.

74. At 1:38:12 a.m., an EKG reported no activity in Godinez's heart. *CFD Run Report*, Ex. V.

75. At 1:50:51 a.m., Jerome contacted OEMC by radio and reported that Godinez was dead. *OEMC Event Query No. 1520100718*, Ex. C, at 2.

76. EMTs also reported that Godinez was dead at 1:50 a.m. *CFD Run Report*, Ex. V.

77. Chicago Police Department evidence technician photographs show abrasions on both sides of Godinez's face and above his left eyebrow, a smashed nose, abrasions to both shoulders, elbows, and knees, and an injury to Godinez's right big toe. *Evidence Technician Photos*, attached as **Exhibit W.** Godinez was still handcuffed behind his back and his legs were still zip-tied together when evidence technicians photographed him. *Evidence Technician Photos*, Ex. W.

**COPA Sustains Charges Against Defendant Officers.**

78. The City of Chicago's Independent Police Review Authority ("IPRA") initiated an investigation into Heriberto Godinez's death shortly after it occurred. *Summary Digest Report*, attached as **Exhibit X.** IPRA investigators interviewed Defendant Officers and civilian witnesses and reviewed the ICC video recordings as part of their investigation. *Summary Digest Report*, Ex. X.

79. On October 24, 2017, IPRA's successor agency COPA released a final report of its findings. *Summary Digest Report*, Ex. X. COPA sustained charges of excessive force and failure to complete

9

a TRR against Johnson, failure to intervene and failure to request medical attention against McAndrew, excessive force and failure to request medical attention against Corona, and failure to request medical attention against Jerome. *Summary Digest Report*, Ex. X.

80. On January 23, 2018, CPD Superintendent Eddie Johnson issued a letter concurring that Defendants Johnson and Corona had used excessive force. *Superintendent Johnson Letter*, attached as **Exhibit Y.** Superintendent Johnson also concurred that Defendant Johnson should have completed a TRR and that McAndrew failed to intervene. *Superintendent Johnson Letter*, Ex. Y.

Respectfully Submitted,

/s Kevin T. Turkcan
One of Plaintiff's Attorneys

Kevin T. Turkcan
HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, IL 60604
312.726.3173