IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JANET GODINEZ, on behalf of herself and as administrator of the estate of her brother, HERIBERTO GODINEZ, Deceased, ) ) ) ) Plaintiff, ) ) vs. ) ) The CITY OF CHICAGO, et al., ) ) Defendants. ) | 16 CV 7344 Judge PALLMEYER Magistrate Judge CUMMINGS |

**PLAINTIFF'S MOTION TO BAR DEFENDANTS'
EXPERT WITNESSSES AND FOR SANCTIONS**

Plaintiff Janet Godinez respectfully requests that this Court bar Defendants' expert witnesses Dr. J. Scott Denton, Dr. Qinwen Mao, and Dr. Eileen Bigio and enter sanctions against the City's attorneys for discovery misconduct.

**Introduction**

Denton, Mao, and Bigio should be barred because the City's attorneys abused the Rules of expert discovery to create and elicit cause of death opinions that were never disclosed *anywhere* prior to these witnesses' depositions in June 2019. The City's attorneys falsely represented to Plaintiff's counsel and to this Court that these witnesses were Rule 26(a)(2)(C) experts. In reality, the City's attorneys prepared these witnesses to rebut the opinions of Plaintiff's cause of death experts just like paid Rule 26(a)(2)(B) experts would. The City's attorneys did this for three reasons:

1. To ambush Plaintiff's counsel with undisclosed opinions at depositions and thus prevent Plaintiff's counsel from adequately preparing for those depositions.

2. To set up an argument at trial that Denton, Mao, and Bigio are "independent" and unpaid experts unlike Plaintiff's "hired guns."

3. To provide the City's own "hired guns" with additional helpful testimony on which to base their opinions.

The City's attorneys tried to trick Plaintiff's counsel and this Court and they tried to sidestep the Rules of expert disclosures. For several months, they succeeded, but now their abuse of the Rules has been revealed. The mandatory sanction for this misconduct is to bar all three witnesses at summary judgment and trial. In addition, the City's attorneys should be sanctioned for their false representations to this Court and Plaintiff's counsel and their abuse of the discovery process.

**The City Falsely Claims that Denton, Mao, and Bigio are Rule 26(a)(2)(C) Witnesses**

The timeline is important to understanding how the City's attorneys abused the Rules of expert discovery. Their deceit was subtle and occurred over a long period of time, but it becomes clear when viewed chronologically.

The cause of 26-year-old Heriberto Godinez's death in police custody is hotly disputed. Plaintiff's theory is that Godinez died as a result of the improper police restraint techniques used on him; namely the police standing on his neck, back, and head while he was handcuffed and prone on the ground. This is depicted in video recordings from Defendant Officers' in-car camera. Defendants argue that Heriberto died of a drug overdose. There are three expert witnesses at issue in this motion:

1. **Dr. J. Scott Denton**, a former Cook County medical examiner now living in Bloomington, Illinois. In 2016, Denton was retained and paid by the Cook County State's Attorney's Office to review Heriberto's autopsy findings in conjunction with the criminal investigation into Heriberto's death. In April 2016, Denton reviewed the Cook County medical examiner's file and the in-car camera video recordings and drafted an 8-page report for the Cook County State's Attorney's Office. He concluded that Heriberto died of a cocaine overdose. *See Denton Report*, attached as **Exhibit A.**

2. **Dr. Qinwen Mao,** a forensic neuropathologist at Northwestern Memorial Hospital. In August 2015, she conducted a neuropathological consult for the Cook County Medical Examiner's Office as part of Heriberto's autopsy by examining his brain and spinal cord. On August 18, 2016, Mao drafted a 3-page

2

> report for the Cook County Medical Examiner's Office. *See Mao Report*, attached as **Exhibit B.**

3. **Dr. Eileen Bigio,** also a forensic neuropathologist at Northwestern Memorial Hospital. She is Mao's supervisor and concurred with Mao's findings, but did not draft any reports of her own. *See Mao Report*, Ex. B

The City disclosed Denton and Mao as Rule 26(a)(2)(C) experts in December 2016, referring to their respective reports; Bigio was not disclosed at all. *See Defendant City's Initial Rule 26(a)(1)(A) and Rule 26(a)(2)(C) Disclosures*, attached as **Exhibit C.** Denton and Mao did not produce any reports for this civil rights lawsuit. The City did not disclose any opinions beyond Mao's August 2015 report and Denton's April 2016 report. The City never disclosed these witnesses as Rule 26(a)(2)(B) experts and never produced any of the disclosures required of such witnesses – case lists, curricula vitae, fee schedules, and so on.

The distinction between Rule 26(a)(2)(B) and (C) experts is critical. Rule 26(a)(2)**(C)** witnesses gain their information from firsthand observations at the time of the incident and have "ground-level involvement in the events giving rise to the litigation," like Heriberto's autopsy. *Avnet v. Motio, Inc.*, 2016 WL 927194, at *2 (N.D. Ill. March 4, 2016) (quoting *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011)). Rule 26(a)(2)(C) experts "must only testify about opinions that were formed during the course of their participation in the relevant events of the case…and not those that [they] developed later or in anticipation of litigation." *Guarantee Trust Life Co. v. American Medical and Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2012). This rule makes sense – Rule 26(a)(2)(C) experts do not provide reports for purposes of the litigation, so they are limited to the opinions they recorded before the litigation began. This way, both sides know what the Rule 26(a)(2)(C) experts' opinions are early on and cannot be surprised with new opinions later.

**The City's Attorneys Use Denton, Mao, and Bigio to Create New, Undisclosed Opinions**

On April 26, 2019, Plaintiff disclosed two Rule 26(a)(2)(B) cause of death experts, Dr. Jan Leestma (neuropathologist) and Dr. Michael Baden (forensic pathologist). The City's attorneys used Denton, Mao, and Bigio to rebut Plaintiff's experts' opinions by helping them craft new opinions that were never disclosed until their depositions.

On May 14, 2019, the City's attorneys met with Denton in Bloomington, Illinois. *Denton Deposition Transcript Excerpts ("Denton Dep. Tr.")*, attached as **Exhibit D,** at 124:15-24. At this meeting, defense counsel disclosed Plaintiff's cause of death experts' opinions to Denton and discussed them with him. *Denton Dep. Tr.*, Ex. D, at 126:17-134:10. Defense counsel also asked Denton to review photographs and microscopic slides of Heriberto's spinal cord, which Denton did not have when he drafted his report. *Denton Dep. Tr.*, Ex. D, at 126:17-134:10. The City's attorneys asked Denton to form new opinions based on documents and information he did not have at the time he drafted his report for the State's Attorney's Office. The City's attorneys were preparing Denton to rebut the opinions of Plaintiff's experts at his deposition without properly disclosing his new rebuttal opinions. The City's attorneys never told Plaintiff's counsel that this meeting even happened. Rather, Plaintiff's counsel learned about it on their own a month later, on the Friday before Denton's deposition from Denton himself.

On May 16, 2019, the City produced supplemental Rule 26(a)(2)(C) disclosures naming Mao and Bigio as expert witnesses. *See Defendant City of Chicago's Supplemental Rule 26(a)(2)(C) Disclosures*, attached as **Exhibit E.** Notably, these disclosures expanded Mao's opinions beyond her August 2015 report to "all opinions disclosed at her deposition" without identifying what those opinions might be. *Id.* The timing of these disclosures was odd as well. Why would the City re-disclose Mao and newly disclose Bigio *after* receiving Plaintiff's retained expert disclosures? The answer, as the disclosures themselves suggested, was that the City was planning to use Mao and Bigio's depositions to improperly elicit new opinions from them without disclosing those opinions to Plaintiff's counsel.

4

Indeed, on May 23, 2019, the City's attorneys sent Mao and Bigio's attorney an email with Dr. Leestma's report and asked that Mao and Bigio review it before their depositions. *See May 23, 2019 Email Correspondence*, attached as **Exhibit F.** Clearly, the City's attorneys were planning to elicit undisclosed rebuttal opinions about Dr. Leestma's opinions at Mao and Bigio's depositions.

### The City's Attorneys Insist on Deposing their Own Expert Witnesses

The Court set separate periods for Plaintiff's expert discovery and Defendants' expert discovery, as is typical. Plaintiff's experts were to be deposed by June 28, Defendants' expert disclosures were due July 8, and Defendants' experts were to be deposed thereafter. But strangely, Defendants insisted on deposing the three "non-retained" experts that *they* disclosed and that are helpful to *their* case during the discovery period for *Plaintiff's* experts. This was suspicious – why was the City pushing to depose its own experts, especially during Plaintiff's expert discovery? The City's attorneys will claim that they had to depose Denton, Mao, and Bigio before the June 28 summary judgment motion deadline in order to use their testimony at summary judgment. But this is illogical for two reasons. First, a summary judgment motion on cause of death would be (and is) completely meritless because that issue is a battle of the experts and there are many disputes of fact on that point. Second, if Denton, Mao, and Bigio really were Rule 26(a)(2)(C) witnesses, then their opinions were limited to their reports from 3-4 years ago. The City could just cite those reports at summary judgment; there was no need for depositions prior to June 28.

The real purpose for Defendants deposing their own experts was to elicit the new, undisclosed opinions that the City's attorneys had created while sidestepping the disclosure requirements of Rule 26(a)(2) to ambush Plaintiff's counsel with those new opinions at depositions. Plaintiff's counsel foresaw this issue and brought it to the Court's attention multiple times. On June 7, 2019, Plaintiff's counsel alerted the Court to the fact that the City's attorneys were planning to elicit undisclosed opinions from Denton at his deposition. *See June 7, 2019 Hearing Transcript*,

5

attached as **Exhibit G,** at 6:14-10:9. The Court ordered the deposition to proceed but said that it would entertain a motion to bar undisclosed opinions. *Id.* at 12:15-22 ("[I]f [Denton] gives opinions that go beyond his disclosure, I'll entertain a motion *in limine* to keep him out of the trial.").

On June 18, 2019, the Court heard argument on Plaintiff's motion to compel proper disclosures for Dr. Denton in compliance with Rule 26(a)(2)(B). The undersigned again alerted the Court that the City's attorneys were preparing Denton to rebut Plaintiff's experts' opinions. *See June 18, 2019 Hearing Transcript*, attached as **Exhibit H,** at 2:20-3:23. The Court asked Attorney Kamionski whether Denton's testimony would go beyond his April 2016 report and Attorney Kamionski said, "It will stick with what's in [the report.]" *June 18, 2019 Hearing Transcript*, Ex. H, at 4:7-10. That was untrue. The Court stated that if Denton offered rebuttal opinions not contained in his report, then the Court "wouldn't admit them at trial." *June 18, 2019 Hearing Transcript*, Ex. H, at 6:10-15.

### The City's Attorneys Use Depositions to Improperly Elicit Undisclosed Opinions

Plaintiff's counsel's suspicions were confirmed at all three doctors' depositions in June 2019. The City's attorneys used these depositions to elicit a wide range of new, completely undisclosed opinions from Denton, Mao, and Bigio, which the City's attorneys had created in the months beforehand.

The City deposed Denton on June 19, 2019 in Bloomington. The City's attorneys elicited a number of opinions that were not disclosed in Denton's report or the City's Rule 26(a)(2) disclosures. For example:

- The carotid artery hemorrhages were no different than other hemorrhages found all over Heriberto's body, which were simply the product of decomposition and did not evidence neck trauma. The City's attorneys had Denton identify such hemorrhages in a large number of individual photographs, which he did not do in his report. *Denton Dep. Tr.*, Ex. D, at 42:9-54:23, 84:25-104:1.

6

- The most common way that people die in police restraint cases is from police officers laying across their body or trunk. *Denton Dep Tr.*, Ex. D, at 30:16-31:9.

- Godinez becoming "calm" or "going back to baseline" after Johnson and Corona stood on his face, neck, and back means that Defendant Officers' restraint techniques did not adversely affect Godinez. *Denton Dep. Tr.*, Ex. D, at 35:18-24.

- Godinez's warm skin, as noted by paramedics, is consistent with death from cocaine intoxication. *Denton Dep. Tr.*, Ex. D, at 36:23-41:3.

- Edema fluid in Godinez's lungs was caused by cocaine intoxication. *Denton Dep. Tr.*, Ex. D, at 56:23-57:9.

- Godinez exhibited acute psychosis caused by cocaine. *Denton Dep. Tr.*, Ex. D, at 67:12-68:3.

- Godinez had a series of strokes that were caused by acute and chronic cocaine use. *Denton Dep. Tr.*, Ex. D, at 68:24-69:15.

There is no question that Denton is a retained Rule 26(a)(2)(B) expert; he testified that he expects the City to pay him $400/hour for his deposition testimony. *Denton Dep. Tr.*, Ex. D, at 142:18-143:14.

The City deposed Mao and Bigio on June 24, 2019. The City's attorneys primarily used these witnesses to rebut Dr. Leestma's opinion that there is microscopic evidence of edema in Heriberto's cervical (upper) spinal cord. In Dr. Leestma's opinion, this injury occurred at a location in the cervical spinal cord that would have paralyzed Heriberto's diaphragm and caused him to asphyxiate. The City used Mao and Bigio to claim that Godinez's cervical spinal cord was not present at their neuropathological consult, and therefore that no tissue samples were taken from the cervical spinal cord. *See Mao Deposition Transcript Excerpts ("Mao Dep. Tr.")*, attached as **Exhibit I**, at 18:11-24:22; *Bigio Deposition Transcript Excerpts ("Bigio Dep. Tr.")*, attached as **Exhibit J**, at 10:22-16:12 This is not found anywhere in Mao's report, which says only that Mao observed the spinal cord, not what sections of it she observed or were present. *Mao Report*, Ex. B.

When Mao prepared her report in August 2015, she examined *physical* glass slides of samples of Godinez's brain and spinal cord. *Mao Dep. Tr.*, Ex. I, at 79:12-15. Her deposition revealed that

7

Attorney Kamionski met with Mao at her office for approximately 45 minutes in early 2019 and showed her *digital* microscopic slides that she did not have when she drafted her report. *Mao Dep. Tr.*, Ex. I, at 83:19-85:5. Mao and Kamionski were alone; Mao's attorney was not present at this meeting because Mao was unrepresented at the time. *Mao Dep. Tr.*, Ex. I, at 84:10-15. At her deposition, Mao could not confirm that the digital slides Attorney Kamionski showed her during the early 2019 meeting were created from (and therefore the same as) the physical slides that she reviewed in August 2015. *Mao Dep. Tr.*, Ex. I, at 43:9-23; 79:12-19. Nevertheless, Kamionski questioned Mao about the *digital* slides – not the physical slides she reviewed in August 2015 – at her deposition because he had already discussed the digital slides with her and he knew what she would say about them. Thus, Kamionski elicited new opinions from Mao about materials she likely did not review when she drafted her August 2015 report.

Attorney Kamionski also lied about whether Mao had seen the *digital* slides before her deposition, obscuring the fact that he had met with her and shown them to her. The following exchange is critical:

| | |
|---|---|
| Mr. Turkcan: | So just – just to be clear for the record, Avi, you cannot confirm whether Dr. Mao has seen these [digital] slides before or not? I just want to be really clear about that, because I – |
| Mr. Kamionski: | I mean, you – you – |
| Mr. Turkcan: | -- don't think we really got an answer. |
| Mr. Kamionski: | Well I – **I don't have an answer**, and so – *Mao Dep. Tr.*, Ex. I, at 40:16-24 (emphasis added). |

In fact, Attorney Kamionski did have an answer: He knew full well that Mao had seen the digital slides before because he showed them to her at their meeting in early 2019. This exchange is a microcosm of the gamesmanship that has infected expert discovery in this case.

8

The implication of Mao and Bigio's testimony is that because no tissue samples were taken from Heriberto's cervical spinal cord, Dr. Leestma misidentified the section of the spinal cord in which he saw microscopic edema, *i.e.*, he must have been looking at the thoracic (middle) or lumbar (lower) spinal cord. The City will use this testimony in an effort to discredit Dr. Leestma and argue that the mechanism of injury he describes is impossible because Godinez either (a) did not have a spinal cord injury or (b) did have a spinal cord injury, but it was too low on the spinal cord to cause the paralysis that Dr. Leestma describes. If the spinal cord injury occurred in the thoracic or lumbar spine, the City will argue, it was below the level of the spinal cord where any injury would cause diaphragm paralysis. It should be noted that Mao and Bigio's testimony is incorrect; the Medical Examiner who performed the autopsy documented that Mao was given the cervical spinal cord for analysis. *See Medical Examiner's Report*, attached as **Exhibit K,** at 5 ("The brain and cervical spinal cord were fixed and retained for neuropathological consultation."). The City also used Mao and Bigio's depositions to elicit opinions that changes seen in Heriberto's brain and spinal cord are "common" and not evidence of any kind of trauma. *Mao Dep. Tr.*, Ex. I, at 28:5-32:12; *Bigio Dep. Tr.*, Ex. J, at 18:12-21:21 These opinions do not appear in Mao's report either. *Mao Report*, Ex. B.

The prejudicial effect of this tactic was immediately apparent. Because Plaintiff's counsel did not have proper disclosures from any of these witnesses, Plaintiff's counsel did not know what their new opinions would be and could not prepare for depositions that involved specialized medical testimony. Had the City followed the Rules, Plaintiff would have received disclosures identifying Denton, Mao, and Bigio's new opinions before their depositions. Plaintiff's counsel could have consulted with their own experts about these opinions and conducted their own research, and would have been prepared to question Defendants' experts at their depositions. But the City ignored the Rules. As a result, Plaintiff's counsel had to try to debate forensic pathology and neuropathology

with doctors on the fly. In some cases, this meant that Plaintiff's counsel could not question Defendants' experts at all because they were blindsided by Defendants' experts' new opinions.

After Denton, Mao, and Bigio had been deposed, the City finally produced detailed disclosures of their opinions on July 8, 2019. *See Defendant City of Chicago's July 8, 2019 Supplemental Rule 26(a)(2)(C) Disclosures*, attached as **Exhibit L.** These disclosures are much more detailed than anything the City had produced before and incorporate Denton, Mao, and Bigio's previously undisclosed opinions that the City elicited at their depositions. The July 8 disclosures reveal the truth. The City's attorneys knew all along that their disclosures of Denton, Mao, and Bigio were not nearly detailed enough under Rule 26(a)(2) and they are trying to retroactively fix the problem now.

The City's attorneys' scheme has been successful to this point. They created multiple new cause of death opinions that were never properly disclosed. They also crippled Plaintiff's ability to prepare for some of the most important depositions in this case. Now they plan, at trial, to hold up Denton, Mao, and Bigio as "independent" unpaid rebuttal experts. This Court should not and cannot let the City get away with the bait-and-switch they are trying to pull in this case. These witnesses must be barred to avoid a completely unfair trial and an almost certain appeal.

## Argument

This case shows why the Rules governing expert disclosures exist. As the Seventh Circuit has observed, "[f]ormal disclosure of experts is not pointless." *Musser v. Gentiva Health Services*, 356 F.3d 751, 757 (2004). "The purpose of the report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response." *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 734 (7th Cir. 2010). The City did not provide any notice of the substance of Denton, Mao, and Bigio's opinions until after their depositions. As a result, Plaintiff was not able to prepare for their depositions and will now be prejudiced at trial if they are allowed to testify. The only appropriate remedy is to exclude Denton, Mao, and Bigio under

Federal Rule of Civil Procedure 37(c)(1). In addition, the Court should order the City's attorneys to pay Plaintiff's reasonable attorneys' fees and costs incurred in attending these three depositions and briefing this motion to bar. The City's attorneys lied to this Court and signed deliberately vague expert witness disclosures in violation of Rule 11.

## I. Denton, Mao, and Bigio should be barred under Rule 37(c)(1).[1]

Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a)…is not, unless such failure is harmless, permitted to use as evidence at at trial, at a hearing, or on a motion, any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Rule 37 applies to expert disclosures. *Musser*, 356 F.3d at 758; *see also Cole v. Janssen Pharmaceuticals, Inc.*, 759 Fed. Appx. 518 (7th Cir. 2019). "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017). The City cannot carry that burden, and thus, this Court must exclude Denton, Mao, and Bigio.

## A. The City's disclosure of Denton, Mao, and Bigio was insufficient under Rule 26.

The City's vague and barebones disclosure of Denton, Mao, and Bigio prior to their depositions was insufficient in light of the expansive opinions they ultimately gave. That is especially true considering that the City's attorneys *created* these new opinions, which these witnesses would not have formed but for their meetings with the City's attorneys.

Under Rule 26, expert reports must be "detailed and complete." Fed. R. Civ. P. 26 Advisory Committee's note. A complete report must include the substance of the testimony that an expert is expected to give on direct examination together with the reasons therefore. *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir. 1998). It must not be "sketchy, vague or

---

[1] Defendant Officers disclosed Denton, Mao, and Bigio in the same way as the City on July 16, 2019. *See Defendant Officers' Supplemental Rule 26(a)(2)(C) Disclosures*, attached as **Exhibit M.** Although it does not appear that the Officers' attorneys directly engaged in misconduct, the Officers' disclosures of Denton, Mao, and Bigio must be stricken as well because they are a product of and adopt the City's misconduct.

11

preliminary in nature." *Id.* Expert reports must include how and why the expert reached a particular result, not merely the expert's conclusory opinions. *Id.*

Denton, Mao, and Bigio's disclosures do not even come close to meeting Rule 26's requirements. Denton was disclosed as having "knowledge consistent with his report on the death of Heriberto Godinez and ha[ving] general knowledge of forensic pathology – including, but not limited to, cause of death issues." *See City's Initial Rule 26(a)(1)(A) and Rule 26(a)(2)(C) Disclosures*, Ex. C. This generalized and open-ended disclosure gave Plaintiff's counsel no notice of what Denton might opine upon – perhaps it would be "cause of death issues," but perhaps it would be more than that. As it turns out, it *was* more than that. For example, the City used Denton to specifically rebut Plaintiff's experts' opinions that hemorrhages surrounding Godinez's carotid arteries are evidence of neck trauma. There is no way Plaintiff's counsel could have gleaned that opinion from "cause of death issues."

Mao's original disclosure was limited to her report, and Bigio was not disclosed at all. *See City's Initial Rule 26(a)(1)(A) and Rule 26(a)(2)(C) Disclosures*, Ex. C. Even Mao's supplemental disclosure was vague, referring generally to "all opinions in her report and all opinions disclosed at her deposition" without so much as hinting at what those opinions might be. *See Defendant City of Chicago's Supplemental Rule 26(a)(2)(C) Disclosures*, Ex E. The City never produced any of the materials that Rule 26(a)(2)(B) requires for these three witnesses, such as case lists, curricula vitae, or fee schedules. The City's disclosures were the ultimate exercise in form over substance – they put up the appearance of compliance with Rule 26 without actually giving Plaintiff's counsel notice of what these three experts would actually opine about. Rule 26 required detailed disclosures of Denton, Mao, and Bigio's opinions prior to their depositions and the City did not even come close to meeting those requirements. The City's disclosures of Denton, Mao, and Bigio were insufficient, so these witnesses must be barred under Rule 37(c)(1).

**B. The City's failure to disclose Denton, Mao, and Bigio's opinions was not justified or harmless.**

The City's failure to disclose Denton, Mao, and Bigio's opinions was not justified. Rather, it was a plan to ambush Plaintiff's counsel with opinions that had never been disclosed anywhere in the middle of depositions. The City's July 8, 2019 disclosures tell this Court everything it needs to know to decide this issue. If the City's disclosures of Denton, Mao, and Bigio prior to their depositions were sufficient, then why produce these much more detailed disclosures after their depositions? The City's attorneys produced the July 8, 2019 disclosures because they knew that this motion to bar was coming and were trying to head it off by "disclosing" the new opinions they elicited from Denton, Mao, and Bigio at their depositions *after those depositions had already occurred.*

This Court should not entertain any argument that the City's attorneys supplemented their disclosures because they learned about Denton, Mao, and Bigio's opinions for the first time at their depositions. The City's attorneys interviewed these witnesses before their depositions, so they knew what opinions Denton, Mao, and Bigio would give and should have disclosed them prior to depositions. Not only that, the City's attorneys provided these witnesses with documents, asked them to review materials they did not have at the time of their reports, and told them what Plaintiff's experts' opinions were. The City's attorneys *created* the opinions they later elicited at Denton, Mao, and Bigio's depositions, so of course the City's attorneys knew what those opinions would be. The City's attorneys are trying to retroactively fix a problem that they caused, but the damage has already been done.

The City's failure to comply with Rule 26 was not harmless either. Plaintiff's counsel was forced to go to expert witness depositions in the dark, with no idea what new opinions Denton, Mao, and Bigio might offer beyond their reports. The Seventh Circuit has explained that forcing a party to prepare its strategy on the critical issue of causation without knowing what the opposing party's experts will say is not harmless, and it warrants exclusion under Rule 37(c)(1). *Cole*, 759 Fed.

13

Appx. at 519. That is exactly what happened here. Plaintiff's counsel was forced to combat Defendants' causation theories on the fly, trying to debate neuropathology and forensic pathology with doctors/experts in those fields. That is not an effective or fair way of conducting depositions and the City's attorneys should not be rewarded for it.

The harm from the City's improper disclosures is ongoing. Defendants' retained experts disclosed on July 8, 2019 are relying on the undisclosed opinions that the City elicited from Denton, Mao, and Bigio at their depositions. For example, the City's neurosurgical expert, Dr. Matthew Moore, quotes Mao and Bigio's undisclosed claim that "the cervical spinal cord was not examined grossly or microscopically." *Moore Report*, attached s **Exhibit N,** at 5. Similarly, the City's cardiologist, Dr. Gary Vilke, also relies on Mao's previously undisclosed claim that she did not examine the cervical spinal cord. *Vilke Report*, attached as **Exhibit O,** at 23. Vilke also relies on Denton's testimony that hemorrhagic changes in Godinez's neck tissue reflect decomposition and excess body heat consistent with cocaine intoxication. *Vilke Report*, Ex. N, at 19. The undisclosed opinions that the City created and elicited at Denton, Mao, and Bigio's depositions have infected the reports of other experts, which will certainly lead to even more pretrial litigation. Plaintiff will be asking the Court to bar those opinions as well.

This case shows why litigants must follow Rule 26 and why courts must strictly enforce it. The Federal Rules of Civil Procedure are designed to avoid "trial by ambush," not facilitate it. *Smith v. Nurse*, 2016 WL 4539698, at *11 (N.D. Ill. Aug. 31, 2016). The City's attorneys' gamesmanship and decision not to follow the Rules resulted in "discovery by ambush," which has made a mess of expert discovery in this case. Exclusion of Denton, Mao, and Bigio may seem harsh, but it is the remedy that Rule 37(c)(1) mandates and it is the only way to ensure a fair trial. If the City's attorneys wanted to avoid that outcome, they should have provided Plaintiff with appropriate disclosures in

response to Plaintiff's repeated requests for them. Denton, Mao, and Bigio should be barred for purposes of summary judgment and trial.

## II. The City's attorneys should be sanctioned for making false representations to this Court and to Plaintiff's counsel.

Exclusion of Denton, Mao, and Bigio under Rule 37(c)(1) is itself a sanction, but that is not enough in this case. It is not just that these experts' disclosures were insufficient. The City's attorneys spent months trying to mislead and trick both this Court and Plaintiff's counsel. Most notably, Attorney Kamionski lied to the Court at a hearing on June 18, 2019 when he claimed that Denton would "stick with" what was in his April 2016 report at his deposition. This statement was obviously untrue and Attorney Kamionski knew as much because he met with Denton a month prior, providing him with new documents and evidence, thus helping Denton create new opinions that were not in his report.

The City's attorneys also violated Rule 11, which provides that "[b]y presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney…certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry under the circumstances, it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The City's Rule 26(a)(2) disclosures, which defense counsel signed, were deliberately vague. They were designed not to disclose the City's experts' opinions, but to obfuscate what those opinions would be, which is the exact opposite of what Rule 26(a) intends. The City's attorneys signed their Rule 26(a)(2) disclosures with an improper purpose and they should be sanctioned for it. Rule 11(c)(2) allows this Court to order the City's attorneys to pay the reasonable costs and attorneys' fees Plaintiff incurred in attending the depositions of Denton, Mao, and Bigio, as well as preparing this motion to bar, and that is exactly what the Court should do. Fed. R. Civ. P. 11(c)(2).

The City's attorneys' misconduct in expert discovery is the latest in a long history of misconduct in this case, including:

- Having Helen O'Shaughnessy, a witness who participated in IPRA's investigation of this case, file an appearance on behalf of the City. *See Plaintiff's Motion to* Disqualify, Dkt. 99. O'Shaughnessy only withdrew her improper appearance after Plaintiff moved to disqualify her.

- Unilaterally scheduling the deposition of an out-of-state witness who had no relevance to this case on a date already reserved for one of Plaintiff's depositions. *See Plaintiff's Motion for Protective Order Regarding the Out-of-State Depositions of Danny Spain*, Dkt. 164. The Court granted Plaintiff's motion for a protective order regarding this deposition.

- Scheduling depositions of eyewitnesses without giving any notice to Plaintiff's counsel and without providing copies of deposition subpoenas to Plaintiff's counsel. *See Plaintiff's Motion to Compel Compliance With FRCP 30, For Protective Order, and For Sanctions*, Dkt. 190. Defense counsel abused this Court's subpoena power to trick witnesses into thinking that they had to appear for a deposition when defense counsel actually had no intention of proceeding with a deposition because Plaintiff's counsel would not be present because they had not received notice. The point of this tactic was to question witnesses who might otherwise be unwilling to speak with attorneys who represent the police.

- In at least one case, this tactic worked. Erika Armas, Heriberto's girlfriend at the time of his death, appeared on a motion for a rule to show cause against her on April 2, 2019 but arrived after the case had already been called. She called Attorney Adeeyo, who instructed her to come to Adeeyo's office. Armas did so and was interviewed by the City's attorneys there. *See Armas Deposition Transcript Excerpts*, attached as **Exhibit P,** at 82:19-88:2. In an email to Plaintiff's counsel later that day, defense counsel's paralegal, presumably at the instruction of one of the City's attorneys, claimed that Armas showed up at her office "unannounced." *See April 2, 2019 Email Correspondence*, attached as **Exhibit Q.** Armas testified that that was untrue. *Armas Dep. Tr.*, Ex. B, at 84:9-11.

- Filing a motion for a protective order regarding *Monell* discovery literally two minutes after counsel for the parties finished a Local Rule 37.2 phone conference about that exact issue. *See Plaintiff's Motion to Compel* Monell *Discovery and Response to City's Motion for Protective Order*, Dkt. 252. This Court reprimanded the City's attorneys for abusing Local Rule 37.2 and ordered the City to produce most of the *Monell* discovery that Plaintiff was seeking.

Enough is enough. Counsel for the City has decided to stop following the Rules in this case and their behavior will not change until this Court sanctions them. Specifically, the Court should award Plaintiff's counsel their fees and costs incurred in the briefing of this motion, as well as preparing for and attending the depositions of Denton, Mao, and Bigio. The Court can enter such

16

sanctions pursuant to 28 U.S.C. §1927 for defense counsel's unreasonable multiplication of the proceedings and pursuant to the Court's inherent authority to discipline attorneys who willfully abuse the judicial process or act in bad faith. 28 U.S.C. §1927; *see also Magnus Electronics, Inc. v. Masco Corp.*, 871 F.2d 626, 632-34 (7th Cir. 1989).

## Conclusion

Plaintiff recognizes how much of this Court's time has been spent on motion practice and discovery disputes in this case. It is unfortunate that things have gotten to this point, but the Court has to enforce the Rules of Civil Procedure to ensure that the case will be litigated and tried fairly. The City's attorneys have ignored and abused the Rules of expert disclosures and they have gained an unfair advantage because of it. This Court cannot allow that to continue. The Court should bar Denton, Mao, and Bigio pursuant to Rule 37(c)(1), and should sanction the City's' attorneys for their discovery misconduct in this case.

Respectfully Submitted,

/s Kevin T. Turkcan
One of Plaintiff's Attorneys

Kevin T. Turkcan
HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, IL 60604
312.726.3173