UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANET GODINEZ, on behalf of herself and as administrator of the estate of her brother, HERIBERTO GODINEZ, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF CHICAGO, et al., <br><br> Defendants. | No. 16 CV 7344 <br><br> District Judge Mary Rowland |

## ORDER

Before the Court is Plaintiff's motion to bar Defendants' expert witnesses and for sanctions [Dkt. 309]. For the reasons set forth below, the motion is denied in part and granted in part.

## STATEMENT

This case arises out of the death of Heriberto Godinez ("Godinez") on July 20, 2015 while in police custody. Plaintiff alleges excessive force, failure to intervene, supervisory liability and conspiracy claims as well as a *Monell* policy claim and Illinois state law claims for wrongful death, battery, and intentional infliction of emotional distress. The issues before the Court are whether the testimony of Drs. Denton, Mao and Bigio should be barred under Rule 37(c)(1), and whether sanctions should be issued against the City's attorneys for discovery misconduct.

A. **Barring expert testimony under Rule 37(c)(1)**

Plaintiff moves to bar Drs. Denton, Mao and Bigio from testifying under Rule 37(c)(1) arguing that these doctors were improperly disclosed as Rule 26(a)(2)(C) non-retained experts but should have been disclosed as Rule 26(a)(2)(B) retained experts, which requires provision of full expert reports. Fed.R.C.Proc. 26(a)(2) governs the disclosure requirements for retained and non-retained experts. Under Rule 26(a)(2)(B), "a complete and detailed report of the expert witness's opinions, conclusions, and the basis and reasons for them" is required for retained expert disclosures. *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) (citing Rule 26(a)(2)(B)). By contrast, Rule 26(a)(2)(C) provides that experts not retained for the purposes of litigation must only submit a summary disclosure, which is less extensive than a retained expert report. Although a written expert report is not required for non-retained experts, "to guard against the prejudice of unfair surprise on opposing parties, and for 26(a)(2)(C) to have any meaning, summary disclosures . . . must clearly identify the witness, state the subject matter of the expected testimony, and summarize actual opinions." *Martin v. Stoops Buick, Inc.*, No. 114-cv-00298-RLY-DKL, 2016 WL 4088132, at *3–4 (S.D. Ind. July 28, 2016) (citations omitted); *see also Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) ("Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report.") (citations omitted).

Pursuant to Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." As such "[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 951 (7th Cir. 2018) *quoting Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004); *see also Hassebrock v. Bernhoft*, 815 F.3d 334, 341 (7th Cir. 2016) ("If a party doesn't make a timely and complete expert witness disclosure, the expert's testimony ordinarily can't be presented at trial.").

**1. Scope of Non-Retained Expert Testimony**

In April 2016, J. Scott Denton, M.D., a forensic pathologist and Illinois coroners' physician, reviewed, *inter alia*, the Cook County Medical Examiner (CCME)'s file, autopsy photographs, and the in-car camera video recording of the incident. He then authored an 8-page report for the Cook County State's Attorney's Office ("CCSAO") as part of that office's review of whether to bring criminal charges in connection with Mr. Godinez's death. (Dkt 309-1 at 2–9). The City disclosed Dr. Denton as a Rule 26(a)(2)(C) witness on December 6, 2016 and included a copy of his report. (Dkt. 309-3 at 11–12). The City's Rule 26(a)(2)(C) disclosure stated that Dr. Denton "has knowledge, consistent with his report on the death of Heriberto Godinez and has general knowledge of forensic pathology – including, but not limited to, cause of death issues as describe[d] in his report." (*Id.*).

Quinwen Mao, M.D., Ph.D., and Eileen Bigio, M.D., Ph.D., forensic neuropathologists at Northwestern Memorial Hospital, provided services and analysis to the CCME as part of the CCME's post-mortem death investigation of Mr. Godinez. On August 18, 2015, Dr. Mao wrote a 3-page report on her pathology examination and findings for the CCME's office. (Dkt. 309-2). Dr. Bigio supervised Dr. Mao and concurred with Dr. Mao's findings, but did not draft any reports on her own. The City disclosed Dr. Mao as a Rule 26(a)(2)(C) expert in December 2016 and included Dr. Mao's report, which indicated that Dr. Bigio concurred with the report's findings. (Dkt. 309-3 at 12; Dkt. 309-2 at 3). The City's Rule 26(a)(2)(C) disclosure stated that Dr. Mao "has knowledge of the Histologic study done on Heriberto Godinez as described in her report." (Dkt. 309-3 at 12). The City did not disclose Dr. Bigio as a Rule 26(a)(2)(C) expert at that time. However, on May 16, 2019, the City produced supplemental Rule 26(a)(2)(C) disclosures naming Dr. Bigio as a non-retained expert witness. (Dkt. 309-5). The disclosure indicated that Dr. Bigio "has knowledge of the Histologic study done on Heriberto Godinez as described in Dr. Mao's report bates number QH14-QH16, including her review of any medical examiner photos, the results of Dr. Mao's brain and spine dissection, and her review and concurrence with Dr. Mao's findings as identified in QH15." (*Id.* at 3). The supplemental disclosure for Dr. Mao indicated that her knowledge of the histologic study done on Mr. Godinez as described in her report, included "her review of any medical examiner photos, her brain and spine dissection, and her review of histology slides created by the [CCME's] Office." (*Id.*).

The Court finds that Drs. Denton, Mao, and Bigio were properly disclosed as Rule 26(a)(2)(C) non-retained experts and thus only summary disclosures were required. The initial Rule 26(a)(2)(C) disclosures of Drs. Denton and Mao on December 6, 2016 and the supplemental disclosures of Drs. Mao and Bigio on May 16, 2019 were timely made within the deadline set by the court, July 29, 2019. (*See* Dkt. 143, Dkt. 241). These disclosures were sufficiently detailed, containing "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Moreover, Drs. Denton, Moa and Bigio were not "retained or specially employed" by the City which would trigger the more detailed disclosure requirements of Rule 26(a)(2)(B). Rather, their opinions were derived from their involvement in the investigations regarding Godinez's death by the CCME and CCSAO, independent from this civil lawsuit. Because they are "percipient witness[es] . . . testifying based upon [their] personal knowledge of the facts or data at issue in the litigation," they may be properly considered non-retained experts for the purposes of Rule 26(a)(2). *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.,* 291 F.R.D. 234, 237 (N.D. Ill. 2013); see also *Sec. & Exch. Comm'n. v. Nutmeg Grp., LLC*, No. 09 C 1775, 2017 WL 4925503, at \*5 (N.D. Ill. Oct. 31, 2017) ("'a percipient witness' whose 'opinion testimony arises . . . from his ground-level involvement in the events giving rise to the litigation' may be disclosed under Rule 26(a)(2)(C)") (citations omitted).

The matters that gave rise to the present motion arose prior to the witness depositions when Defendants supplemented their discovery disclosures. Plaintiff

believes that through these discovery supplements, preparation of the witnesses for deposition[1] and deposition questions, Defendants have circumvented the discovery rules by transforming Drs. Denton, Mao, and Bigio into rebuttal expert (Rule 26(a)(2)(B)) witnesses. It is well-established that Rule 26(a)(2)(C) experts "must only testify about opinions that were formed during the course of their participation in the relevant events of the case and only to those opinions which were properly disclosed." *Guarantee Tr. Life Ins. Co.*, 291 F.R.D. at 237. Plaintiff asserts that all three witnesses have exceeded their respective reports in significant ways. Defendants deny this accusation and assert that the witness' testimony is consistent with their Rule 26(a)(2)(C) reports. Since the Court finds the experts were properly disclosed as summary witnesses, the issue is the permissible scope of these witness' testimony.

### 2. Dr. Denton's Testimony

Plaintiff argues that during Dr. Denton's deposition, he offered several opinions not in his Rule 26(a)(2)(C) report. Plaintiff alleges seven instances in which Dr. Denton exceeded the scope of permissible testimony for a non-retained expert witness. After careful review of Dr. Denton's deposition transcript and his report, the Court finds that five of these opinions are permissible as they are rooted in his report and derived from his "ground-level involvement in the case." *Sec. & Exch. Comm'n., LLC*, 2017 WL 4925503, at *5.

---

[1] Plaintiff's reply raises concerns about Defendants' preparation of Dr. Denton, specifically reviewing Dr. Leestma's report with Dr. Denton. (Dkt. 366 at 3–4). As a lay expert witness, Dr. Denton's report does not address Dr. Leetsma nor does his report address the issue of the length of Godinez's spinal cord. He will not be permitted to offer opinions on these two topics during trial.

Plaintiff argues that Dr. Denton's deposition opinion that "Edema fluid in Godinez's lungs was caused by cocaine intoxication", (Dkt. 309-4 at *56:23–57:9*), is impermissible because it is not found in Dr. Denton's report. This argument is unpersuasive as Dr. Denton stated in his report, "[t]he lungs showed moderate edema fluid with an increased combined lung weight of 1,502 grams . . . These autopsy findings are inconsistent with a restraint-related death, and most consistent with an acute cocaine intoxication." (Dkt. 325-5 at 4). Similarly, Plaintiff asserts that Dr. Denton's opinion that "Godinez had a series of strokes that were caused by acute and chronic cocaine use," (Dkt. 309-4 at *68:24–69:15*), is not found in his report. However, a review of the report shows otherwise. In his report, Dr. Denton stated, "the cause of [Godinez's] cerebral strokes and hemorrhages can reasonably be attributed to his cocaine abuse and resultant elevated blood pressure. It is likely that these strokes in critical central deep locations in his brain played a role in his death. The mineralization from an older injury also seen in his basal brain is likely related to an older area of ischemia or stroke, possibly related to past cocaine use." (Dkt. 325-5 at 6). Dr. Denton's opinion about Godinez's strokes is not new but was grounded in Dr. Denton's report.

Plaintiff next takes issue with Dr. Denton's opinion that "Godinez's warm skin, as noted by paramedics, is consistent with death from cocaine intoxication," (Dkt. 309-4 at *36:23–41:3*), arguing that this conclusion was not in Dr. Denton's report. Plaintiff is correct this opinion was not in Dr. Dention's report. He notes Godinez's warm skin twice, both times ascribing it to Godinez's "strenuous activity".

(Dkt. 309-1 at 4); *see also* (Dkt. 309-4 at 7) ("excess body heat generated by his exertion and work of his muscles."). Although Dr. Denton did not connect Godinez's skin temperature to cocaine intoxication in his report, the Court believes this is a permissible testimony in light of the overall findings of his report and his being disclosed to provide testimony on the cause of death.

Further, Plaintiff argues that Dr. Denton's opinion that "Godinez exhibited acute psychosis caused by cocaine," (Dkt. 309-4 at *67:12–68:3*), is a specific diagnosis of a mental disorder that is not included in Denton's report. But Dr. Denton noted in his report that "[p]rior to his death [Godinez] was behaving irrationally and in a delirious and highly agitated state that is associated with cocaine intoxication and sudden death." (Dkt. 309-1 at 6). This opinion about Godinez's behavior due to his apparent cocaine use prior to his death is not beyond this non-retained expert's proper purview.

Plaintiff also faults the City's attorneys for asking Dr. Denton "to identify [ ] hemorrhages in a large number of individual photographs, which he did not do in his report." (Dkt. 309 at 6, *citing* Dkt. 309-4 at *42:9-54:23, 84:25-104:1*). Plaintiff acknowledges that Dr. Denton viewed these autopsy photographs in preparing his reports but argues that because Dr. Denton did not identify individual photographs in his report, doing so at deposition constitutes a new opinion. The Court disagrees. Dr. Denton's report states, "[t]he internal autopsy photographs notably show what appear to be small scattered hemorrhages throughout the entire soft tissues of the body . . . ." (Dkt. 309-1 at 5). Dr. Denton stated in the deposition that these are the

same photographs he reviewed when writing his report. (Dkt. 309-4 at 12–16). Simply identifying the specific photographs at his deposition is factual testimony, not new opinion testimony. His failure to specify each individual photograph in his report does not make the testimony impermissible.

The Court agrees with Plaintiff regarding the final two opinions that Plaintiff challenges. Dr. Denton made a notation in his report that Mr. Godinez "goes back to baseline" after being restrained. In fact, Dr. Denton's report indicates that it is an important point that Mr. Godinez returned to an agitated state after being restrained. (Dkt. 309-1 at 4). At deposition, Dr. Denton expounded that this notation "means that Defendant Officers' restraint techniques did not adversely affect Godinez." (Dkt. 309-4 at *35:18–24*). The Court believes this explanation constitutes an opinion not properly disclosed. If Dr. Denton were disclosed as an expert under Rule 26(a)(2)(B) on the effects of restraint, this would be well within permissible testimony. But the disclosures being limited to what they were, this opinion is beyond what is permissible.

Plaintiff further argues that Dr. Denton's opinion that "[t]he most common way that people die in police restraint cases is from police officers laying across their body or trunk," (Dkt. 309-4 at 3–4) is a "new" opinion and is beyond the scope of permissible testimony. Dr. Denton did not offer this opinion in his original report, and this explanation goes beyond his percipient observations of Mr. Godinez and opines on the frequency of restraint asphyxia deaths in police restraint cases. While this might properly be the subject of a witness subject to Rule 26(a)(2)(B)

*Godinez v. City of Chicago, et al.*, No. 16 CV 7344                                                                 9

disclosure requirements, the Defendants are relying on Dr. Denton as a lay expert witness. This opinion is beyond what is appropriate for this witness given the expert disclosure in this case. Dr. Denton will be barred from testifying consistent with this opinion. *See Martin*, 2016 WL 4088132, at *4 (limiting a non-retained expert's testimony "to providing opinions that are within the scope of his own observation.") (*citing Downey*, 633 F.3d at 7; *Guarantee Trust*, 291 F.R.D. at 237).

### 3. Doctors Mao and Bigio

Plaintiff argues that the opinions of Drs. Mao and Bigio "that Godinez's cervical spinal cord was not present at their neuropathological consult, and therefore that no tissue samples were taken from the cervical spinal cord" were not found in Dr. Mao's report and therefore must be barred.[2] (Dkt 309 at 7). The Court agrees this explicit finding is not in Dr. Mao's report but disagrees it is an opinion that must be barred. As a non-retained expert, Dr. Mao reviewed histologic sections of the spinal cord. (Dkt. 309-2 at 2–3). During her deposition, she was asked to identify photographs of the histology slides she reviewed in preparing her report. (Dkt. 309-9 at 39). Like Dr. Denton's review of photographs, this is fact testimony. At times Dr. Mao was uncertain about whether the photograph depicted the slide she reviewed, but her testimony was proper. Relying on the photographs, defendants questioned Dr. Mao in an effort to establish that she did not review portions of the cervical spine as opposed to the lumbar spine.[3] (Dkt. 309-9 at 38–41). This is

---

[2] Dr. Bigio concurred with Dr. Mao's findings and did not submit her own report.

[3] Plaintiff asserts that Dr. Mao's testimony is contradicted by the Medical Examiner's report that indicates "the brain and cervical spine were fixed and retained for

relevant fact testimony, and the Court will not strike it as outside the scope of Dr. Mao's report. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017) (holding that plaintiff's non-retained experts can testify regarding "facts that may contradict the facts underlying [defendant's] experts' opinions",).

Plaintiff also argues that Defendants elicited new opinions from Drs. Mao and Bigio that "changes seen in [Gonzalez]'s brain and spinal cord are 'common' and not evidence of any kind of trauma." (Dkt. 309 at 9) (*citing* Dkt. 309-9 at 28–32; Dkt. 309-10 at 18–21). The Court finds these opinions within the permissible scope of non-retained expert testimony, and that the subject matter was addressed in Dr. Mao's report, when she indicated, "[s]ections of the spinal cord and dura are unremarkable." (Dkt. 309-2 at 2).

## **B. Sanctions under Rule 11 for discovery misconduct**

The Court is not persuaded by Plaintiff's argument that the City's attorneys engaged in sanctionable discovery misconduct by preparing Doctors Denton, Mao and Bigio to rebut the opinions of Plaintiff's cause of death experts just like paid Rule 26(a)(2)(B) experts in order to "ambush Plaintiff's counsel with undisclosed opinions and depositions." (Dkt. 309 at 1–2). The Court finds that Defendants' initial and supplemental disclosures, which were all filed before defendants' expert disclosure deadline, do not represent a "trial by ambush" and do not "threaten to belatedly send the case on a wholly different track." *Mintel Int'l Grp., Ltd. v.*

---

neuropathological consultation." (Dkt 309 at 9) (*citing* 309-11 at 5). This is a matter for the jury to consider, not a basis to disqualify Dr. Mao.

*Neergheen*, 636 F. Supp. 2d 677, 685–86 (N.D. Ill. 2009) (*citing Talbert* 236 F.R.D. at 424). Plaintiff argues that "[t]he City's attorneys lied to this Court and signed deliberately vague expert witness disclosures in violation of Rule 11." (Dkt. 309 at 11). The Court finds no evidence of deliberate deception and therefore denies Plaintiff's motion for sanctions under Rule 11. The Court has also reviewed the numerous additional cross allegations of discovery misconduct as elaborated in the parties' briefs and finds that no Rule 11 sanctions are warranted.

## CONCLUSION

For the reasons discussed, Plaintiff's motion to bar Defendants' expert witnesses and for sanctions [Dkt. 309] is denied in part and granted in part.

E N T E R:

Dated: October 18, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge