# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JANET GODINEZ, on behalf of herself
and as administrator of the estate of
her brother, HERIBERTO GODINEZ,
Deceased,

      Case No. 16-cv-07344

Plaintiff,

      Judge Mary M. Rowland

v.

THE CITY OF CHICAGO, et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Janet Godinez filed this action against Defendant City of Chicago ("the City") and individually named Defendant Police Officers ("Defendant Officers") for conduct, she alleges, resulted in the death of her 26-year-old brother Heriberto Godinez on July 20, 2015. Plaintiff asserts excessive force, failure to intervene, supervisory liability and conspiracy claims under 42 U.S.C. § 1983, a *Monell* policy claim, and Illinois state law claims for wrongful death, battery, and intentional infliction of emotional distress. Before the Court are cross motions for summary judgment by Plaintiff and Defendant Officers on the excessive force and failure to intervene claims. Defendant Officers also move for summary judgment on the supervisory liability, conspiracy, and state law claims, as well as their qualified immunity defense.[1]

---

[1] Plaintiff voluntarily dismissed from the case Defendant Officers McCollom, Przybylowski, Pfeifer, Exclusa, Remigio, and Oksanen. (Dkts. 342, 360).

1

For the reasons stated below, Plaintiff's motion for summary judgment [293] is denied and Defendant Officers' motion for summary judgment [286] is granted in part and denied in part. The Court denies Plaintiff's summary judgment motion on excessive force and failure to intervene. The Court grants summary judgment for Defendants on Plaintiff's conspiracy claim, but denies summary judgment on the excessive force, failure to intervene, supervisory liability claims, state law claims, and Defendants' qualified immunity defense.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences

in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted). The court "may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

On cross-motions for summary judgment, the Court must "view all facts and inferences in the light most favorable to the nonmoving party on each motion." *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015) (citation omitted); *see also Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015) ("[T]he court must be mindful of its obligation to adopt what Judge Shadur aptly characterizes as a dual, 'Janus-like' perspective. That is, the court must now grant the unsuccessful movant all of the favorable factual inferences that it has just given to the movant's opponent. Only if the court can say, on that sympathetic reading of the record, that no finder of fact could reasonably rule in the unsuccessful movant's favor may the court properly enter summary judgment against that movant.") (internal citations omitted). Where there is video evidence in a case, the court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372,

381, 127 S. Ct. 1769, 1776 (2007). *See also Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016).

## STATEMENT OF FACTS[2]

On July 20, 2015, Chicago Police Department Officers Lindskog and McAndrew responded to a 911 call made at 12:57:13 a.m. by Julio Garcia who informed the officers that he was walking home from work when he saw a man on his front porch knocking hard on his door and swearing at him; the man then ran away in the direction of a school. (Dkt. 329 at 2; Dkt. 365 at 2). Although Officer Lindskog testified that he and Officer McAndrew heard screams and glass breaking when they encountered Godinez in the garage,[3] (Dkt. 361 at 3), Defendant Officers admit that when Lindskog and McAndrew found Mr. Godinez, he approached them with his hands up. (Dkt. 329 at 3). Officer McAndrew testified that Godinez was acting erratically, and Officers Lindskog and McAndrew stated that they believed Godinez was under the influence of drugs and/or alcohol. (Dkt. 329 at 3, 6). Officer Lindskog ordered Godinez to the ground. (Dkt. 329 at 4) He complied, and Officers Lindskog and McAndrew handcuffed Godinez behind his back while he was lying on his stomach. (Dkt. 329 at 4).

---

[2] Unless otherwise noted, these facts are undisputed. The Court makes its own observations from the police dash camera video (Dkt. 281-10, Ex. 10) (*Williams*, 809 F.3d at 942) and highlights where the parties' characterization of events seen on the video differ.

[3] Plaintiff admits that Officer Lindskog testified to this conduct but indicates there is witness testimony that no sounds were heard coming from the garage and no evidence that glass was broken. (Dkt. 361 at 3).

Officers Arroyo and Corona then arrived on the scene in a vehicle equipped with a forward-facing dashcam which produced a video recording (the video recording has no audio track). (Dkt. 329 at 5). Officer Corona testified that the police interaction with Godinez was part of a "burglary investigation." (Dkt. 329 at 4). When Officers Arroyo and Corona arrived at 12:06:29 a.m.,[4] the video shows Officer McAndrew standing next to Godinez with his left foot on Godinez's back for seven to ten seconds. (*Id.*). Gonzalez was lying on his stomach with his hands cuffed behind his back. (*Id.*). The video shows Gonzalez lifting his head and left shoulder off the ground and moving his head and shoulders from side-to-side while Officer McAndrew's foot is on Godinez's back. (*See* Video at 12:06:29–12:06:40).[5] After lying on the ground for approximately one minute, sporadically lifting his head and upper body, Godinez maneuvered himself into a seated position and scooted down the side of the vehicle towards the rear of the police SUV. (Dkt. 329 at 6) (*see* Video). At 12:10:00 a.m.,[6] Officer McAndrew puts his hands on Godinez's shoulders as Godinez continues to scoot toward the rear of the vehicle. Godinez falls backward, then lifts his upper body and moves his legs. Officer McAndrew again puts his hands on Godinez's shoulders and his knee on Godinez's abdomen as Godinez continues to move his upper body and legs towards the rear of the vehicle. (Dkt. 329 at 5–7). Whether Officer McAndrew

---

[4] As Plaintiff explains, the time stamp on the ICC (in-car camera system) video recording was incorrect and was out of sync with the actual time by 1 hour, 4 minutes, and 9 seconds. When the times noted in the body of this opinion are from the dash cam video, the actual time will be contained in a footnote. In real time Arroyo and Corona arrived at 1:10:38 a.m.

[5] 1:10:38-1:10:49 a.m.

[6] 1:14:09 a.m.

pushed Godinez to the ground or merely placed his hands on his shoulders to prevent him from moving forward is in dispute, as is the extent to which Godinez is struggling, flailing, and resisting.

At 12:10:16 a.m., according to the dashcam timestamp, Officer Corona is seen walking up to Godinez and placing his foot on Godinez's stomach as Godinez continues to move his upper body and legs.[7] (Dkt. 329 at 8). Godinez continues to move his body until his head is near the tailpipe, and, at 12:10:21 a.m.,[8] Officer Corona puts his right foot on the side of Godinez's head for approximately 2 to 3 seconds and Godinez's head moves to the ground under Officer Corona's foot. (Dkt. 365 at 5–6). Officer Corona testified that Godinez was agitated, sweating profusely, and his breathing was labored. (Dkt. 329 at 8). Officer Corona claimed that he used his right foot to prevent Godinez from moving around and hurting himself. (Dkt. 329 at 9; Dkt. 365 at 5). The parties dispute how much weight Officer Corona put on Godinez's head and whether he pushed his head to the ground with his foot or "stood" on his head. Defendant Officers claim, "Officer Corona's foot never pressed Godinez's head to the ground and Corona never 'stands' on Godinez's face, head, neck, or back." (Dkt. 365 at 6). Plaintiff argues that the video shows: "Corona's foot press Godinez's head to the ground . . . [and] Corona standing with at least some of his weight on Godinez's head and/or face and all of his weight on Godinez's legs." (Dkt 365 at 6).

---

[7] 1:14:25 a.m.

[8] 1:14:30 a.m.

When Officers Johnson, Madsen, and Nowakowski arrived, Godinez was lying on his stomach with his hands cuffed behind his back at the rear of the police SUV. (Dkt. 329 at 10). The timestamp on the dashcam video was 12:11:06 a.m.[9] (*Id.*). Godinez can be seen struggling, moving his upper body, hands and legs. (*See* Video). Officer McAndrew held Godinez's upper body down with his hands, while Officer Corona held Godinez's legs down with his foot or feet. (Dkt. 329 at 10). At 12:11:09 a.m.,[10] Officer Johnson placed his foot on Godinez. (*See* Video). It appears that at 12:13 or 12:14 a.m.,[11] Officer Johnson took his foot off Godinez. (*See* Video). He and the other Officers who were around Godinez all moved away from Godinez.

The location of where he placed his foot (*i.e.*, on Godinez's head, neck, or shoulder) is in dispute (Dkt. 329 at 11), and it is unclear from the video. Officer Johnson testified that his foot was on Godinez's left shoulder blade. (Dkt. 329 at 11). Officer McAndrew testified that Officer Johnson's foot was on Godinez's shoulder and briefly on his head. (Dkt. 329 at 12). Lt. Jerome observed Officer Johnson's foot on Godinez's shoulder. (Dkt. 329 at 15). It is disputed how much weight Officer Johnson placed on Godinez and for how long. (Dkt. 329 at 12–13).

Immediately after Officer Johnson removed himself from Godinez, for approximately 4 minutes and 8 seconds on the dashcam video, between 12:14:16 a.m. and 12:18:24 a.m.,[12] Godinez was completely still. (Dkt. 365 at 16). The parties dispute whether Godinez was "calmly lying on his back" during this time or was lying

---

[9] 1:15:15 a.m.
[10] 1:15:18 a.m.
[11] 1:17 or 1:18 a.m.
[12] 1:18:25-1:22:33 a.m.

unconscious. (Dkt. 365 at 16-17). The video shows the officers moving around the alley, occasionally shining their flashlights on Godinez, (Dkt. 329 at 17), but not otherwise interacting with Godinez except for one unnamed officer briefly touching Godinez for approximately six seconds. (Dkt. 365 at 16). Lt. Jerome communicated to the dispatcher that the police no longer needed shackles for Godinez. (Dkt. 329 at 16).

At 12:18:24 a.m.,[13] Godinez displayed sudden movements, lifting his waist and lower back off the ground while scooting his body under the running police car. (Dkt. 329 at 18). The parties' characterization of Godinez's movements at this time differs. Defendant Officers assert Godinez can be seen on the video "kicking his legs straight up and lifting his waist and lower back off the ground while scooting sideways under Beat 911R's SUV and hitting his stomach against the tailpipe multiple times . . . [and] pressing his hips and abdomen up with enough force that he moves the SUV upward." (Def SOF 42). Plaintiff denies Godinez's movements seen on the video "constituted any sort of conscious 'kicking;' rather, they appear to be almost involuntary, akin to the behavior of a person drowning." (Dkt. 365 at 17). Lt. Jermone testified that he believed Godinez needed a mental health evaluation immediately before he was taken to the squadrol. (Dkt. 329 at 16–17). Officers Johnson and Corona testified that Godinez was a "passive resistor" or an "active resistor," but not an assailant. (Dkt. 329 at 17).

---

[13] 1:22:33 a.m.

Multiple officers pulled Godinez out from under the SUV and carried him out of view of the dash camera to a squadrol at 12:19:24 a.m.[14] (Dkt. 329 at 18–19). Lt. Jerome testified that Godinez's breathing was labored; Officer Corona requested an ambulance at 1:27:01 a.m.[15] (Dkt. 329 at 20). The Chicago Fire Department paramedics arrived at 1:34:00 a.m. A minute later, they reported that Godinez had no pulse and no blood pressure and was not breathing. (*Id.* at 21). At 1:38:12 a.m., an EKG reported no activity of Godinez's heart. EMT's reported that Godinez was dead at 1:50 a.m. (Dkt. 329 at 21).

## ANALYSIS

### I.    Count I:  Excessive Force

### A.  Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on her excessive force claim against Officers Corona and Johnson arguing that the undisputed facts, including the video evidence, establish that the amount of force used by Officers Corona and Johnson was unreasonable as a matter of law.

"An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest." *Williams,* 809 F.3d at 944 (citation omitted). Courts evaluate a claim that an officer used excessive force while making an arrest under the Fourth Amendment's standard of objective reasonableness. *Graham v. Connor,* 490 U.S. 386, 395–96, 109 S. Ct. 1865, 1871–72,

---

[14] 1:23:33 a.m.
[15] This is the actual time as the parties are no longer relying on the dashcam timestamp.

104 L. Ed. 2d 443 (1989). This standard requires courts to "'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Scott,* 550 U.S. at 383 (brackets omitted) (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). "An officer's use of force is unreasonable from a constitutional point of view only if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (internal quotation marks omitted).

In *Graham*, the Supreme Court set forth factors to determine whether a police officer's use of force was reasonable, including: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. Courts determine whether a particular use of force was reasonable under the circumstances by viewing the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted). Courts remain cognizant of "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Williams*, 809 F.3d at 944 (quoting *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 724 (7th Cir. 2013)). "[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often

susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (citation omitted); *see also Abdullahi*, 423 F.3d at 772–73 (noting that because the *Graham* reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.") (internal quotation marks omitted).

Plaintiff asserts that all of the *Graham* factors indisputably weigh in her favor because: (1) the severity of the crime was minimal as Godinez was suspected of committing a non-violent property crime; (2) Godinez posed no immediate threat to the safety of the officers or others as he was handcuffed and unarmed during the relevant events; and (3) he was not actively resisting arrest or attempting to evade arrest as he complied with the Officers initial order to get on the ground and be handcuffed. (Dkt. 293). Plaintiff further argues that the amount of force used by Officers Corona and Johnson was unreasonable because the video evidence conclusively establishes that Godinez was not an aggressor and that Officers Corona and Johnson "stood on Godinez's face, back, neck, and head while he was on his stomach and handcuffed." (Dkt. 293 at 7).

Defendants respond that the video shows "Officer Corona and Officer Johnson coming into physical contact with Mr. Godinez only when he is actively resisting efforts to control his movements and prevent injury to Mr. Godinez and Officers." (Dkt. 328 at 1). In addition to interpreting the video differently, the parties dispute whether the Officers believed Godinez was having a mental health crisis, at what

point they believed he was having such a crisis, and what implications a that has for their decision to use force.

Although the Court views the "facts in the light depicted" by the video (*Scott,* 550 U.S. at 380–81), the Court cannot say that the video "clearly depicts" the entire incident, or that either party's version of events is "blatantly contradicted" by the video. *Williams*, 809 F.3d at 942. In deciding Plaintiff's motion, the Court must view the evidence and reasonable inferences in the light most favorable to Defendant Officers and must refrain from "choos[ing] between competing inferences or balanc[ing] the relative weight of conflicting evidence." *Abdullahi*, 423 F.3d at 773. The video does not establish that Officers Johnson and Corona did *not* use excessive force, as Defendants argue. To the contrary, the video in this case makes this a very close call as to whether Officer Johnson used excessive force, as a matter of law, against Godinez. However, material issues of fact remain to be decided by the jury.

As to Officer Corona, the video shows him placing his foot on the side of Godinez's head for two to three seconds, and Godinez's head moving to the ground under his foot. But the amount of pressure Officer Corona put on Godinez's head and how much weight he applied is not readily apparent. Defendants argue that Officer Corona did this to avoid Godinez hitting his head. (*See* Dkt. 287 at 4–5). The jury should see the video and judge Officer Corona's testimony to determine whether he engaged in excessive force that evening.

As to Officer Johnson, it is clear from the video that while he has his foot on Godinez, he lifts his other foot off the ground thereby shifting more of his weight onto

Godinez. Whether he puts his second foot and shifts all of his weight onto Godinez is a question of fact for the jury. And, if the answer is yes, the jury should further determine whether that was excessive force under the circumstances.

The Court finds that there are genuine issues of material fact as to the *Graham* factors. Under the first factor, while a non-violent property crime is not a significant violation, "resisting law enforcement is a more serious offense." *Williams*, 809 F.3d at 944. Testimonial evidence as well as the video evidence show that a reasonable juror could find that a reasonable officer could have believed that Godinez was resisting them. As to the second factor, although Godinez was unarmed and handcuffed, a reasonable juror could find that the situation continued to be uncertain and Godinez continued to resist the officers, for example by preventing them from tying his legs, or was vulnerable to injuring himself. As to the third factor, the video does not depict a situation where a reasonable officer could believe Godinez was a flight risk, considering he was handcuffed and considering the number of officers who arrived on the scene. However, a reasonable juror could find that he was attempting to resist arrest. And because the video does not conclusively resolve these disputes, the Court will not choose between competing inferences to be drawn from the video. *See e.g., Abbott*, 705 F.3d at 730 (distinguishing passive noncompliance and active resistance). Thus, there are genuine issues of material fact about the reasonableness of force used by Officers Johnson and Corona.

Plaintiff argues that the type of force used here on someone who is "unarmed, restrained, prone, and obviously undergoing some sort of mental health crisis"

violates established law, relying on *Abdullahi, Drummond*, and *Champion*. (Dkt. 293 at 16). In *Abdullahi,* the Seventh Circuit reversed the district court's grant of summary judgment for defendant officers because there was an issue of material fact as to whether the officer used an unreasonable amount of force against Mohamed. 423 F.3d 763. The Seventh Circuit explained: "It is undisputed that (1) Brooks knelt on Mohamed's shoulder or back for 30-40 seconds while Mohamed was prone on the ground, and (2) Mohamed died roughly two minutes later of severe injuries consistent with pressure or crushing trauma to the chest and neck area. There is competent expert medical testimony that Mohamed suffered these injuries after being put on the ground by the arresting officers." *Id.* at 769. The Seventh Circuit further explained that "plaintiff has identified the specific misconduct at issue -- Brooks placing his knee on Mohamed's back -- and she has introduced competent medical evidence indicating that it caused deadly injuries." *Id.* at 771.

Here, by contrast, the specific alleged misconduct at issue is in dispute. While it is undisputed that Officer Johnson placed his foot somewhere on Godinez's upper body, that is where the agreement ends.[16] The parties dispute where on Godinez's body Officer Johnson placed his foot and how much weight he put on Godinez. At his deposition, Officer Johnson denied placing all of his weight on Godinez but admitted that his right foot was on him and his other foot was in the air at one point (Johnson Dep. (Dkt. 288-5) at 109). And from the video the Court cannot conclusively say how

---

[16] Defendants argue that "Officer Johnson positioned his foot on Godinez's shoulder for less than two minutes until Officers Nowakowski and Madsen were able to fasten the flex-cuffs to Godinez's legs." (Dkt. 287 at 9). Plaintiff argues that "Johnson applied his full weight to Godinez's back, neck, and head for approximately two minutes." (Dkt. 342 at 26).

much weight was on Godinez and where. Also different from the *Abdullahi* case is that causation was undisputed in *Abdullahi*. 423 F.3d at 771 ("[a]ll the medical experts in this case agree that Mohamed died of a collapsed lung and other injuries consistent with extreme external pressure.") In this case, there are competing expert testimonies about the cause of death and whether the specific alleged misconduct (or any misconduct at all) caused Godinez's death. (Dkt. 399-401).

Plaintiff relies heavily on one passage in *Abdullahi*:

> The reasonableness of kneeling on a prone individual's back during an arrest turns, at least in part, on how much force is applied. Kneeling with just enough force to prevent an individual from "squirming" or escaping might be eminently reasonable, while dropping down on an individual or applying one's full weight (particularly if one is heavy) could actually cause death...Mohamed's undisputed attempts to "squirm" or arch his back...upward while he was being restrained may not constitute resistance at all, but rather a futile attempt to breathe while suffering from physiological distress "akin to drowning."

*Id.* at 771. This passage is instructive, but it does not establish that the officers used excessive force in this case.[17]

---

[17] Plaintiff also cites *Coleman* where the court granted summary judgment in favor of Mr. Coleman who was tasered, forced to the floor by officers with both his hands cuffed and legs shackled, and dragged by his handcuffs while he was motionless. *Coleman v. City of Chi.,* 2015 U.S. Dist. LEXIS 166658 (N.D. Ill. Dec. 14, 2015). All this was captured on video. In granting summary judgment, the court found: "Officer Kirkland unquestionably used excessive force in pulling Mr. Coleman's hands over his head and dragging him from the cell." Here, there are questions of fact about whether Godinez was resisting or subdued at the time the Officers used force. In *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), the court stated that that officers should have known it was unreasonable force to "squeez[e] the breath from a compliant, prone, and handcuffed individual despite his pleas for air." Here there is conflicting testimony about what Godinez said over the course of the incident (and the video has no audio), and it is a question for the jury about whether he was compliant or resisting. *See also, Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004) (court affirmed a jury verdict for plaintiff).

Plaintiff also relies on the IPRA (COPA) and the CPD Superintendent findings that Officers Corona and Johnson used excessive force. (Dkt. 293 at 6). COPA sustained charges of excessive force against Johnson and Corona and failure to intervene against McAndrew. CPD Superintendent Eddie Johnson issued a letter concurring that Officers Johnson and Corona used excessive force and that McAndrew failed to intervene. The Court does not agree with Defendants that the IPRA and Superintendent Johnson statements are immaterial. Defendants cite to a Seventh Circuit case, *Thompson,* which was clarified in *United States v. Brown,* 871 F.3d 532 (7th Cir. 2017): *"Thompson should not* be understood as establishing a rule that evidence of police policy or procedure will never be relevant to the objective-reasonableness inquiry." *Id.* at 537 (emphasis added). While the Court finds that the IPRA findings and Superintendent Johnson letter are evidence precluding Defendants' motion for summary judgment on excessive force (and failure to intervene), the findings do not conclusively establish a constitutional violation in this case. *See Brown,* 871 F.3d at 536–37 ("The excessive-force inquiry is governed by constitutional principles, not police-department regulations. An officer's compliance with or deviation from departmental policy doesn't determine whether he used excessive force."). *See also Abdullahi,* 423 F.3d at 772 (expert testimony about violations of standard police practices are not dispositive but may be relevant to the reasonableness inquiry).

For the reasons already discussed, summary judgment in favor of Plaintiff on excessive force is not proper as there are genuine issues of fact for a jury to decide

about excessive force. *See Abdullahi*, 423 F.3d at 770 ("it is for a jury, and not for us, to weigh all the evidence and choose between competing inferences.").

## B. Defendants' Motion for Summary Judgment

The Officer's motion for summary judgment argues that summary judgment should be granted in favor of certain Officers on the excessive force claim since "[t]here is no evidence that Officers … Murphy, ... Arroyo, Dadi, Schmid, and Zdeb, Sgt. Corlett, and Lt. Jerome ever came into any physical contact with Godinez."[18] (Dkt. 287 at 5-6). The Court agrees. The Court now grants summary judgment on Plaintiff's excessive force in favor of Officers Murphy, Arroyo, Dadi, Schmid, and Zdeb, and Sgt. Corlett and Lt. Jerome. Those Defendants are dismissed from the excessive force count.

Plaintiff argues that excessive force as to Officers Lindskog, McAndrew, Calderon, and Brown should be decided at trial. (Dkt. 342 at 3-4). The Court finds that Plaintiff has not shown sufficient evidence of excessive force as to Officers Lindskog, McAndrew, Calderon, and Brown to survive a motion for summary judgment. Therefore, Defendants' summary judgment motion on excessive force as to Officers Lindskog, McAndrew, Calderon, and Brown is granted, and those defendants are dismissed from that count.

Defendant Officers also argue that Officer Corona and Johnson are entitled to summary judgment on the excessive force count. For all of the reasons described above, the court denies this request. In response to Defendants' motion, Plaintiff

---

[18] Plaintiff already agreed to voluntarily dismiss McCollom, Przybylowski, Pfeifer, Exclusa, Remigio, and Oksanen from the case. (Dkt. 342 at 2).

argues that some the opinions of Plaintiff's proffered expert, Charles Drago, "add to the genuine disputes of material fact about whether Defendant Officers' use of force was reasonable." (Dkt. 342 at 10). The Court agrees. *See Abdullahi*, 423 F.3d at 772 ("the plaintiff's proffered expert testimony that Brooks' tactics violated standard police practices, while not dispositive, may also be deemed relevant to the reasonableness inquiry, as might the plaintiff's evidence that Brooks was aware of Mohamed's mental disabilities."). In sum, viewing the evidence and drawing reasonable inferences in favor of Plaintiff, Defendants have failed to show that summary judgment as to Officer Johnson and Corona is warranted. The Court cannot rule as a matter of law that Officers Johnson and Corona did not use excessive force against Godinez.

## II.  Count II:  Failure to Intervene

"[A]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The Seventh Circuit "has made clear that the prongs of this analysis almost always implicate questions of fact for the jury." *Abdullahi*, 423 F.3d at 774.

Because the Court does not find as a matter of law that excessive force was used, the Court cannot find as a matter of law that the Officers did or did not fail to intervene. *See Abdullahi*, 423 F.3d at 774 ("given that the excessive force claim against Brooks is not amenable to summary judgment, the associated failure to intervene claims must go to trial as well.").

### III.    Count III:  Supervisory Liability

Plaintiff brings a supervisory liability claim against Officers Jerome and Corlett. "Supervisory liability" is a "theory of liability under which a plaintiff can hold a supervisor liable for unconstitutional conduct." *Sroga v. Preckwinkle*, 2016 U.S. Dist. LEXIS 33529, at *18 (N.D. Ill. Mar. 14, 2016). "For what is referred to as supervisory liability to attach, a defendant acting under color of state law, must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *McDonald v. Obaisi*, 2017 U.S. Dist. LEXIS 148487, at *8 (N.D. Ill. Sep. 13, 2017) (internal quotations omitted).

Because there are genuine issues of material fact about the unconstitutional conduct in this case, there are also genuine issues of material fact about whether Officers Jerome and Corlett can be held liable. A jury will need to weigh the evidence to determine if unconstitutional conduct occurred and if Officers Jerome and Corlett knew about it and facilitated, approved, condoned, or turned a blind eye to it.

### IV.    Count IV:  Conspiracy

"In order to establish Section 1983 liability on a conspiracy theory, a plaintiff must show that the defendants reached a mutual understanding to deprive plaintiff of his

constitutionally-protected rights." *McNamara v. Guinn*, 2000 U.S. Dist. LEXIS 12624, at *8 (N.D. Ill. Aug. 22, 2000). Here, however, the Court need not evaluate the evidence to determine if this standard is met because Plaintiff amended her claim in response to the summary judgment motion.

Plaintiff's Second Amended Complaint alleges that the Officers conspired to "cover up their own, and each others' misconduct with respect to [Godinez]" (SAC, ¶ 30). Plaintiff now argues that the alleged conspiracy was to deprive Godinez of his constitutionally-protected rights to medical care and "to delay the arrival of non-police personnel to the scene by delaying the request for an ambulance." (Dkt. 342 at 24–25). Defendants respond that this argument amends Plaintiff's pleadings and is forfeited. (Dkt. 372 at 34). The Court agrees with Defendants. "[A] party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment." *Colbert v. City of Chi.*, 851 F.3d 649, 656 (7th Cir. 2017); *see also Hays v. GE*, 151 F. Supp. 2d 1001, 1006 (N.D. Ill. 2001) (same). Plaintiff argues that summoning the ambulance was a topic of discovery and Defendant Jerome was disciplined by CPD for this reason, but "a court will not imply a party's consent to try an unpleaded claim, [] merely because evidence relevant to a properly pleaded issue incidentally tends to establish [that] unpleaded claim." *Colbert*, 851 F.3d at 656–57 (internal citations and quotations omitted). Defendants' motion for summary judgment on this claim is granted and Plaintiff's conspiracy claim is dismissed.

## V. Counts VI, VII, and VIII: Wrongful death, battery and intentional infliction of emotional distress

Plaintiff brings Illinois state law claims of wrongful death, battery, and intentional infliction of emotional distress. Defendants argue that "[a]lthough these claims are not brought directly against Defendant Officers, Defendant Officers deem it necessary to assert that the undisputed facts establish that their conduct during the underlying incident was not willful and wanton." (Dkt. 287 at 16).

"Under Illinois law conduct is willful and wanton if it 'shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others.' Whether conduct is willful and wanton is a factual question." *Carter v. Simpson*, 328 F.3d 948, 951 (7th Cir. 2003) (citations omitted). "Whether an officer acted [willfully and wantonly] is normally a question of fact to be determined by the jury." *Wilson v. City of Chi.*, 2013 U.S. Dist. LEXIS 9495, at *32 (N.D. Ill. Jan. 24, 2013) (internal citations and quotations omitted).

Defendants have not shown that the question of whether the officers acted willfully and wantonly, a question of fact normally for the jury, should be taken away from the jury in this case. In addition, as discussed in the opinion ruling on the City's motion for summary judgment, entered contemporaneously with this ruling, there are also material questions of fact regarding causation for the wrongful death claim.

Summary judgment on the Illinois state law claims is not warranted.

## VI.    Qualified Immunity Defense

Defendants argue that they are entitled to qualified immunity as a matter of law. "Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'…To overcome the defendant's invocation of qualified immunity, the plaintiffs must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott*, 705 F.3d at 713. A constitutional right is "clearly established" for qualified-immunity purposes where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 725.

Defendants contend that "the dashcam video clearly shows that no Officer used excessive or deadly force." (Dkt. 287 at 4). The Court does not agree. As discussed, there are questions of fact for the jury about excessive force and failure to intervene. For example, depending on whether a juror finds that Godinez was passively or actively resisting and the amount of force they believe was used, a reasonable juror could find that the officers violated clearly established law prohibiting use of significant force on a passively resisting suspect. *See Abbott*, 705 F.3d at 732 ("Prior to 2007, it was well-established in this circuit that police officers could not use significant force on non-resisting or passively resisting suspects."). *See also Abdullahi*, 423 F.3d at 775 (concluding that a jury should decide what was clear to

the reasonable officer in the situation). Accordingly, Defendants' motion for summary judgment on qualified immunity is denied and the question of qualified immunity will be decided by the jury.

## CONCLUSION

For the above stated reasons, the Court denies Plaintiff's motion for summary judgment [293], and Defendant Officers' motion for summary judgment [286] is granted in part and denied in part.

E N T E R:

Dated: October 30, 2019

_____
MARY M. ROWLAND
United States District Judge