IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANET GODINEZ, on behalf of herself and as administrator of the estate of her brother, HERIBERTO GODINEZ, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF CHICAGO, et al.,<br><br>Defendants. | Case No. 16-cv-07344<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Janet Godinez filed this action against Defendant City of Chicago ("the City") and individually named Defendant Police Officers for conduct, she alleges, resulted in the death of her 26-year-old brother Heriberto Godinez on July 20, 2015. Plaintiff asserts excessive force, failure to intervene, supervisory liability and conspiracy claims under 42 U.S.C. § 1983 as well as a *Monell* policy claim and Illinois state law claims for wrongful death, battery, and intentional infliction of emotional distress. The City moves for summary judgment on Plaintiff's Illinois wrongful death claim and the *Monell* policy claim (Counts V and VI). For the reasons stated below, the Court denies the City's motion for summary judgment [279] as to these claims.

1

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## ANALYSIS

### I. Illinois Wrongful Death Claim

Under the Illinois Wrongful Death Act, 740 ILCS 180/1, a decedent's estate may bring a suit against a party "whose alleged 'wrongful act, neglect or default' caused the death." *Paredes v. Cook Cty.*, No. 15 C 3644, 2018 WL 4955865, at *3 (N.D. Ill. Oct. 12, 2018) (*quoting* 740 ILCS 180/1). A plaintiff must prove causation in order to prevail on a wrongful death claim. *Id.* "Proximate cause is a question of fact for the jury unless there is no material issue regarding the matter or only one conclusion is clearly evident." *Williams v. Univ. of Chicago Hosps.*, 179 Ill. 2d 80, 88–89, 688 N.E.2d 130, 134 (1997).

The City moves for summary judgment against Plaintiff on the wrongful death claim because "Plaintiff cannot produce admissible evidence from which a jury could reasonably find that Godinez's death was caused by the actions of police officers." (Dkt. 280 at 4). Defendants argue that because Plaintiff's retained cause of death experts, forensic pathologist Michael Baden, M.D., and neuropathologist, Jan Leestma, M.D., should be barred, Plaintiff cannot meet the essential element of causation.

Concurrently with the instant motion, the City filed motions to exclude the testimony of Drs. Leestma and Baden. For the reasons described in separate rulings, (Dkts. 400 & 401), the Court will allow both Drs. Leestma and Baden to testify as to cause of death. The Court found those experts qualified to opine as to the cause of death, that their methodology is sound, and that their testimony will be helpful to

the jury. The weight to be given to the doctors' conclusions are questions for the jury to decide and can be tested on cross-examination at trial. *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010) ("[W]hether the cause put forth by a qualified expert actually proximately caused the injury at issue is a question for the jury at trial; a district court should only evaluate whether an expert's conclusion on causation was reasoned and based on a reliable methodology."); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Because the Court will allow the testimony of Drs. Leestma and Baden as qualified and reliable experts, this case presents the classic "battle of the experts" on the cause of death issue. Defendants will present expert testimony from forensic pathologists that the cause of Mr. Godinez's death was alcohol and cocaine intoxication, (dkt. 280 at 4) (*citing* Def. SOF ¶¶44, 57); whereas, Plaintiffs' experts will testify that the cause of death was positional asphyxia and spinal cord injury caused by Defendant Officers' use of force. (Dkt. 344 at 4–6) (*citing* Pl. SOAF ¶¶8, 11, 13–14). It is not for this Court to make credibility determinations on the expert opinions on summary judgment. *Manjarrez v. Georgia-Pac. LLC*, No. 12 C 1257, 2013 WL 3754861, at *5 (N.D. Ill. July 16, 2013). This "battle of the experts" creates a genuine issue of material fact. *Chamberlain Grp., Inc. v. Lear Corp.,* 756 F.Supp.2d 938, 951 (N.D.Ill.2010) ("It is indeed true that a 'battle of the experts' can preclude summary judgment"). Given the conflicting expert testimony, and drawing all

reasonable inferences against the moving party, the Court finds the issue of causation to be appropriately left to the trier of fact and denies summary judgment as to the wrongful death claim.[1]

## II. *Monell* Claim

### A. *Monell* Standard

A municipality can be liable under 42 U.S.C. § 1983 for a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978). Liability arises "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989) (emphasis in original). Therefore under *Monell*, the "critical question" is whether a municipal policy or custom "gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

To establish § 1983 municipal liability, a plaintiff must show "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury." *Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 535 (7th Cir. 2005). The second element may take one of three forms: "(1) an express policy that would cause a constitutional

---

[1] The City also requests to be dismissed from any excessive force, failure to intervene, conspiracy, supervisory liability or survival claims based on lack of evidence of causation. (Dkt. 280 at 9). That argument is rejected for the reasons already stated. In addition, this Court's ruling on Defendant Officers' motion for summary judgment, entered with this opinion, denies Defendant Officer's motion on these claims except the conspiracy claim. The conspiracy claim is dismissed with prejudice.

5

deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused a constitutional injury." *Rossi v. City of Chi.*, 790 F.3d 729, 737 (7th Cir. 2015). There are "no bright-line rules defining a widespread custom or practice." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (internal quotations omitted). An unconstitutional policy can include implicit policies or a gap in expressed policies. *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) (citations omitted). A plaintiff must prove "a true municipal policy at issue, not a random event." *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

**B. Parties' Arguments**

In its motion, the City argues that it should prevail as a matter of law on the *Monell* claim because Plaintiff cannot show that her brother's death was the result of any widespread unconstitutional custom or practice by the City. (Dkt. 280). The City contends that all of Plaintiff's *Monell* evidence relates to solely the in-custody death of Godinez, and a single incident does not establish a widespread practice or policy. The City further argues that the investigative files it produced do not show any de facto unconstitutional policy.

Plaintiff responds that a jury should decide the *Monell* claim. She argues that the City is liable under *Monell* because it was deliberately indifferent to the Chicago Police Department's (CPD) widespread pattern and practice of (1) using excessive

6

force; (2) failing to adequately train officers on restraint techniques; (3) failing to maintain video and audio recording equipment and recordings; (4) permitting a code of silence to exist within CPD; and (5) failing to hold police officers accountable for misconduct. (Dkt. 344 at 12); *see also* Second Amended Complaint (SAC), (Dkt. 159 ¶¶34–48).

To show a genuine issue of material fact exists, Plaintiff relies on the following evidence: (1) the 2017 Department of Justice Report (DOJ Report); (2) April 2016 Police Accountability Task Force Report (PATF Report); (3) statements by former Mayor Rahm Emanuel and Superintendent Eddie Johnson; (4) Charles Drago's expert report; (5) other cases involving death by positional asphyxia; and (6) the officers' testimony in this case.

### C. The DOJ and PATF Reports

As an initial matter, the City did not object to the admissibility of the DOJ Report as hearsay in its motion for summary judgment, only in its reply brief. The City only argued that the DOJ and PATF Reports were not related to this case. (Dkt. 280 at 12). The City's hearsay argument is waived. *See Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 360 (7th Cir. 2016) (arguments raised for the first time in a reply brief are waived). Even so, the Court finds the DOJ Report to be admissible evidence as an exception to the hearsay rule.

Federal Rule of Evidence 803(8)(A)(iii) provides an exception to the rule against hearsay for "[a] record or statement of a public office if it sets out…in a civil case… factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii).

7

*See Daniel*, 833 F.3d at 740 ("These findings can take the form of an evaluative report containing both opinions and conclusions."). The party opposing the admission of the evidence has the burden to show that "the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B).

At least three other courts in this district have found this DOJ Report to be admissible. *See First Midwest Bank v. City of Chi.*, 337 F. Supp. 3d 749, 778 (N.D. Ill. 2018) ("The Court thus again finds the [DOJ Report] which, much like the PATF report, consists of directly-relevant subject material, a close enough fit to the issues at bar in the case to fall within 803(8)."); *Estate of Loury v. City of Chi.*, 2019 U.S. Dist. LEXIS 38029, at *3 (N.D. Ill. Mar. 11, 2019) (DOJ Report admissible); *Simmons v. City of Chi.*, 2017 U.S. Dist. LEXIS 137395, at *25 (N.D. Ill. Aug. 28, 2017) (same). The court in *Estate of Loury* addressed the similar lack of trustworthiness arguments raised here by the City. (Dkt. 379 at 14-15). This Court agrees with the analysis in *Estate of Loury* and finds the reasons the City offers to undermine the trustworthiness of the DOJ Report to be unconvincing.

Therefore the DOJ Report is admissible. It is also relevant evidence raising a genuine issue of material fact about whether the City was aware of and deliberately indifferent to widespread customs and practices at the CPD that permitted the alleged unconstitutional and wrongful conduct in this case. The DOJ Report is timely, since the incident in this case occurred in July 2015, and the report studied a time period of January 2011 through April 2016.

8

The City contends that the statements Plaintiff relies on in the DOJ Report do not "discuss the restraint techniques that are the subject of her municipal liability claim here." (Dkt. 379 at 13). Plaintiff relies on the DOJ Report for its discussion and conclusions about excessive force, deficient investigative and accountability systems, and a culture of cover-up and code of silence. Plaintiff specifically cites, for example, the report's conclusion that the "use of unreasonable force to quickly resolve non-violent encounters is a recurrent issue at CPD." (DOJ Report, Dkt. 354-16, Exh. P). These are all subjects of her allegations that the police officers in this case acted as they did because the CPD's practice and policy, condoned by the City, made them believe they would not be investigated or disciplined for using excessive force. The DOJ Report does not discuss the specific restraint techniques in this case but that does not bar Plaintiff from relying on the report as evidence of a genuine issue of material fact related to her *Monell* claim.

Plaintiff also relies on the PATF Report's statements about the CPD's code of silence and deficiencies in the IPRA process. The City argues that the PATF Report is not relevant to this case, but did not object to its admissibility. For the same reasons the Court finds the DOJ Report relevant to Plaintiff's *Monell* claim, the PATF Report is also relevant. *See LaPorta v. City of Chi.*, 277 F. Supp. 3d 969, 989 (N.D. Ill. 2017) (considering PATF report on summary judgment and explaining that "the contents of the City-commissioned PATF report constitute admissions of a party opponent under Fed. R. Evid. 801(d)(2)(D), [and the] hearsay contents of the PATF and DOJ reports are admissible" under Rule 803(8)(A)(iii)).

### D. Public Officials' Statements

Plaintiff argues that statements by then-Mayor Rahm Emmanuel and Police Superintendent Johnson are admissions about the existence of the code of silence. Plaintiff points to statements such as the former Mayor's statement, five months after Godinez's death, that he was looking for a new CPD leader to address a problem "sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny or in some cases cover-up the bad actions of a colleague or colleagues…" Pl's. SOF ¶53. The City argues that these officials' statements "are evidence that the City was continuously striving to do better." The Court agrees with Plaintiff that these statements are evidence showing that judgment as a matter of law in favor of the City at this stage is not appropriate. *See Cazares v. Frugoli*, 2017 U.S. Dist. LEXIS 49938, at *58 (N.D. Ill. Mar. 31, 2017) ("the Mayor's acknowledgement of the existence of a code of silence, along with the findings of the City's PATF and the DOJ's report, provide further, significant evidence regarding the existence of a code of silence within the CPD"); *see also LaPorta*, 277 F. Supp. 3d at 989.

### E. Expert Charles Drago

Plaintiff proffers police procedures expert Charles Drago to support her case that there is sufficient evidence to overcome summary judgment on her *Monell* claim. (Dkts. 281-43, Exh. 43 and 281-44, Exh. 44). As an initial matter, the Court agrees with the City that to the extent Drago opines on the cause of Godinez's death, that opinion should be disregarded. (Dkt. 379 at 10). However, Plaintiff's arguments rely

on Drago's opinions about police restraint techniques and training including as they relate to positional asphyxia, use of force generally and by the officers in this case, and CPD's customs and practices as they relate to this case. In his supplementary report Drago opines, for example, that "The City of Chicago through the Chicago Police Department failed to provide adequate and proper supervision of their police officers in use of force and otherwise" and "The City of Chicago through the Chicago Police Department failed to train their police officers in the proper use of the vascular neck restraint (Carotid Compression)."

The Court does not read Drago's opinions as dependent on one account of Godinez's cause of death. He certainly refers to and opines on positional asphyxia. But he reaches opinions, for example that lack of training and proper supervision caused the officers to use unreasonable of force by standing on Godinez's neck, based on his review of the video, CPD documents, officers' testimony and other evidence in the case. Therefore Drago's reports are additional evidence supporting Plaintiff's argument that the *Monell* question cannot be resolved on summary judgment. *See LaPorta*, 277 F. Supp. 3d at 988 (evidence including expert testimony "suffices to create a jury question on whether the code of silence was at work during the investigation into the LaPorta shooting.").

### F. Officer Testimony and Training Materials

Both parties rely on the officers' deposition testimony as support for their arguments that the officers were or were not properly trained in restraint techniques and use of force. Similarly, both parties rely on the 1995 CPD training bulletin on

11

positional asphyxia as support for their positions. (Dkt. 345-8. Exh. H). Drawing reasonable inferences in favor of Plaintiff based on these testimonies, the training bulletin, and other evidence in the case, there is a triable issue about whether the CPD had a custom or practice of failing to implement training related to use of force and restraint techniques that cut off a detainee's breathing. *See City of Canton*, 489 U.S. at 390 ("it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.").

However the Court will not otherwise make determinations about the officers' credibility or decide how much weight to give to the 1995 CPD training bulletin. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

### G. Moving Force

To establish the causal link between the municipal policy and alleged constitutional deprivation, a plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997) (emphasis in original). The City argues that it cannot be the "moving force" behind the alleged constitutional injury because there is no evidence the police officers caused Godinez's death, and summary judgment should be granted for that reason alone. (Dkt. 280 at 15). But Plaintiff has offered evidence of causation in the form of expert testimony. It

will be up to the jury to weigh the expert testimony, but the Plaintiff has offered enough evidence about causation to survive summary judgment.

To further argue that the City was deliberately indifferent to the dangers of positional asphyxia, Plaintiff asserts that "the City has been on notice of the dangers presented by the kind of force and restraint techniques Defendant Officers used on Godinez" since the late 1980s or early 1990s. (Dkt. 344 at 16). Plaintiff cites a number of other cases such as *Animashaun v. O'Donnell*, 1994 U.S. Dist. LEXIS 17339 (N.D. Ill. Dec. 5, 1994). The City responds that these cases are "from a bygone era" and are hearsay.[2] The Court agrees with Plaintiff that these cases, along with other evidence such as the 1995 training bulletin give rise to the reasonable inference that the City had *notice*—in other words, that the City was aware of and deliberately indifferent to uses of improper restraint techniques.[3]

The City also contends the Court should not consider evidence before January 2012 because that was the discovery period that was set for the City's production of certain investigative files. But that was a discovery time frame for a certain production, not a limit on the evidence Plaintiff could use to show pattern and practice under *Monell* for purposes of summary judgment.[4]

---

[2] The City also argues that Plaintiff did not disclose these cases in response to contention interrogatories. However the Court can take judicial notice of other court decisions. *See Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017).

[3] Of course this finding is different from a finding of admissibility for trial. *See e.g. Simmons*, 2017 U.S. Dist. LEXIS 137395 at *23-24.

[4] The Court does not agree with Plaintiff, however, that the "empty chair" problem is a reason to deny summary judgment. Plaintiff has not cited any case law for the proposition that this is a concern in a *Monell* case.

13

The City makes three other arguments in support of summary judgment. First, the City argues that an investigation *was* done in this case, making the Plainitff's *Monell* theory based on inadequate investigations a moot point. That oversimplifies Plaintiff's theory. It also looks at the theory from the wrong vantage point—the question is about what culture the officers were operating under and what they believed would happen as a result of their conduct on the night of July 20, 2015. Second, the City argues that there is no constitutional right to having police maintain video and audio recording equipment and recordings. But Plaintiff's theory is that the expectation that recording equipment would malfunction or not be used is one aspect of the lack of accountability officers expected because of CPD policies and practices which therefore led to them allegedly using unreasonable force on detainees like Godinez.

Third, the City contends that Plaintiff's evidence is limited only to her brother's death. As the City concedes, "[n]o bright-line rule dictates how frequently conduct must occur." (Dkt. 280 at 10). *See Thomas*, 604 F.3d at 303; *Glisson*, 849 F.3d at 382 ("There is no magic number of injuries that must occur before its failure to act can be considered deliberately indifferent."). The City stresses that the investigative files for a three-year period it produced do not contain evidence of similar incidences. Plaintiff does not respond to that argument. The weight and conclusions to be drawn from the investigative files, to the extent they are deemed admissible, are questions for the jury.

Nevertheless, while a plaintiff must show evidence of systemic deficiencies, she need not "present evidence that these systemic failings *affected other specific inmates.*" *Daniel,* 833 F.3d at 735 (emphasis added). In other words, even if Plaintiff has not pointed to particular deaths similar to Godinez's, Plaintiff has pointed to a variety of evidence, in the form of the DOJ and PATF Reports, public officials' statements, expert testimony, other lawsuits, and evidence about CPD training and accountability that create a genuine issue of fact about the casual link between Godinez's death and CPD practices and the City's *Monell* liability. That is enough to survive summary judgment. "Where the 'causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury.'" *Estate of Loury*, 2019 U.S. Dist. LEXIS 38029, at *23 (*quoting LaPorta*, 277 F. Supp. 3d at 991). "[A] plaintiff need only produce evidence sufficient to *potentially* persuade *any* reasonable jury." *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 648 (7th Cir. 2016) (emphasis in original) (citing *Anderson*, 447 U.S. at 248).

III. Conclusion

For the stated reasons, the Court denies the City's summary judgment motion [279] as to the Illinois wrongful death and *Monell* policy claims.

E N T E R:

Dated: October 30, 2019

_____
MARY M. ROWLAND
United States District Judge